STATE OF NORTH CAROLINA v. JOHN QUINTON SHANK

No. 260A89

(Filed 29 August 1990)

### 1. Criminal Law § 460 (NCI4th) — murder — closing arguments — amnesia — permissible inference

The prosecutor did not misstate the evidence during his closing argument in a murder prosecution when he argued that an expert in psychology had testified that a telephone call fifteen minutes after the killing during which defendant stated that he had killed his wife would tend to show that his claim of amnesia might not be valid. Although the psychologist continued to draw the conclusion that defendant suffered from amnesia, he did testify that the telephone call conflicted with the whole notion of amnesia. The prosecutor did not misstate the evidence but simply drew a permissible inference from it.

Am Jur 2d, Trial § 260.

### 2. Criminal Law §§ 463, 468 (NCI4th) — murder — closing arguments — matters not outside record

The prosecutor in a murder prosecution did not improperly argue matters outside the record when he referred to newspapers and television and contended that defendant's motive for killing his wife was an affair he was having with another woman. The prosecutor was engaged in rebutting arguments made by defense counsel, and, while he would have been better advised to make his appeal directly to the jury's own common sense and knowledge drawn from life experiences without reference to outside sources, the argument was not so improper as to require a new trial. Furthermore, it was uncontroverted that defendant was having an affair and that he left his lover's bed to kill his wife.

Am Jur 2d, Trial § 251.

APPEAL of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment sentencing him to life imprisonment entered by *Martin, J.*, on 27 January 1989 in Superior Court, CLEVELAND County. Heard in the Supreme Court on 14 February 1990.

**STATE v. SHANK**

[327 N.C. 405 (1990)]

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Appellate Defender, by Teresa A. McHugh, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant, John Quinton Shank, was indicted for the first-degree murder of his estranged wife, Dellarie Shank. He was convicted of first-degree murder at the 15 September 1986 Criminal Session of Superior Court, Cleveland County, and sentenced to life imprisonment. On his appeal of that conviction and sentence, this Court awarded a new trial. *State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988). After a retrial of the defendant at the 23 January 1989 Criminal Session of Superior Court, Cleveland County, the defendant was again convicted of the first-degree murder of his wife, and the trial court entered judgment sentencing him to life imprisonment. From that judgment, the defendant appealed to this Court as a matter of right.

Some of the evidence introduced upon the retrial of this case tended to show that a little after 8:30 a.m. on 6 January 1986, the defendant went to the Cleveland County Health Department, where his estranged wife worked. Shortly thereafter, he and the victim came out of the building and stood outside the main entrance talking. The defendant reached into his jacket and pulled out a pistol, and the victim began running and screaming. The victim fell as the defendant fired the pistol at her three times. The defendant then ran over to the victim and fired twice more. He then got into his truck and left the scene. The victim died of multiple gunshot wounds.

At approximately 9:15 a.m., the defendant called his brother Clifford and told him that he had done "something stupid," that he had "shot Dellarie." Clifford Shank then left his place of employment in King's Mountain and drove to Shelby, where he located the defendant along the highway and picked him up. The defendant asked Clifford Shank to take him to South Carolina, but Clifford declined and left the defendant at a shopping center in Gastonia.

Evidence was introduced tending to show that the defendant purchased a pistol and ammunition on 3 January 1986. He bought a shoulder holster from a gun shop on 4 January 1986. At approx-

STATE v. SHANK

[327 N.C. 405 (1990)]

imately 1:30 p.m. on 6 January 1986, the date the defendant's wife was killed, police found the gun and holster the defendant had bought in plain view on the bed in Carolyn Lawrence's house where the defendant had slept the previous night. The gun had been fired recently.

Carolyn Lawrence testified that she met the defendant at work and at some point began seeing him regularly. After October of 1985, the defendant occasionally spent the night with her. She testified that the defendant came to her home on the night of 5 January 1986 wearing a holster and pistol. He spent the night with her and was still in bed when she left for work the next day.

Additional evidence introduced at trial is discussed, where pertinent to the defendant's arguments, at other points in this opinion.

The defendant assigns error to the trial court's failure, upon objection by the defendant, to intervene and prevent or correct certain arguments made by the prosecutor in his closing arguments to the jury. In support of these assignments, the defendant contends that the prosecutor's arguments misstated critical evidence or traveled outside the record and were unsupported by the evidence.

[1] The defendant first contends that the prosecutor misstated or mischaracterized certain testimony to the effect that, at the time of trial, the defendant suffered from amnesia concerning the events surrounding the killing of his wife. "It is well settled that arguments of counsel are left largely to the control and discretion of the trial judge and that counsel will be granted wide latitude in the argument of hotly contested cases." *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). Counsel may argue the facts which have been presented, "as well as reasonable inferences which can be drawn therefrom." *Id.* However, counsel may not argue facts which are not supported by the evidence. *Id.*

In the present case, Dr. William Varley, a psychologist, testified as an expert in psychology for the defendant. Dr. Varley testified that he had interviewed the defendant and administered various tests to him. Dr. Varley testified, *inter alia*, that the defendant suffered from amnesia concerning the killing of his wife.

During his closing arguments to the jury, the prosecutor argued that:

Dr. Varley said, "I supported Dr. Ballinsky's findings of amnesia." What is amnesia, Doctor? "It is a person's claim that he doesn't remember." Is there any absolute test to show that he's telling the truth about his amnesia? "No, it's his word." Dr. Varley, when you supported in your writings on this case that you believed John Shank had amnesia, did you know that fifteen minutes after he killed her and says he doesn't remember it, that he called his brother and told him that he had killed her? He said, "No, I did not know that." Would that have any effect on the claim of amnesia? *I believe he said it would tend to show that maybe it was not valid.*

The defendant contends specifically that the prosecutor misstated the evidence by arguing that Dr. Varley had testified that the defendant's telephone call fifteen minutes after the killing, in which the defendant stated he had killed his wife, would tend to show that the defendant's claim of amnesia might not be valid. We do not agree.

That part of Dr. Varley's testimony which is pertinent to this argument by the defendant, was as follows:

Q. Did you know at the time of your evaluation, Dr. Varley, that within fifteen minutes after [the defendant had shot his wife], during a period of time when he claimed to have no memory, that he dialed his brother by memory and said, "I shot Dellarie, I did a stupid thing, I shot Dellarie?"

A. At the time that I tested him I was not aware of that.

Q. And you concluded in your report that that was consistent with amnesia and reported that to Dr. Ballinsky and to his attorney a long time ago, is that correct?

A. That's correct.

Q. So you had reached that conclusion before you knew that he had, in fact, called his brother and told him, "I shot Dellarie?"

A. That's true.

Q. So that in effect shows as to his shooting Dellarie he could not have amnesia, did it not?

A. Not necessarily.

STATE v. SHANK

[327 N.C. 405 (1990)]

Q. Then how did he know he shot her?

A. He performed an action and the memory loss can, for something along these lines, can come either suddenly or gradually, and based on what you have told me, clearly the memory loss came gradually. Or he may have, he may have done something but later forgotten that he had done it.

Q. He did it and forgot it and remembered it, all in fifteen minutes?

A. No, that's not what I'm saying.

Q. Then what—there's no other time span, is there?

A. Well, there is quite a bit of time span here in terms of when the act occurred, what he did after the act, where he ended up, and what's happened since then. And all the while the mental processes were at work coping with this experience.

Q. Dr. Varley, there is no absolute test to determine whether or not a patient's claim of amnesia is, in fact, real or not, is there?

A. That's correct.

Q. And in that regard, Dr. Varley, you would have to look at the things that happened during the claimed period by the patient of amnesia to determine whether or not that claim was valid, wouldn't you?

A. Not necessarily, because, like I say, amnesia can have gradual onset. *I mean this is information.* I understand what you're saying, *it does conflict with the whole notion of amnesia.* But when I evaluated John, his report to me was that he had no memory for the events after he heard his wife say, you know, "You're not going to see the kids." So when I evaluated him, he was showing symptoms of amnesia and there were signs in the psychological tests which indicate to me that he was, to the best of his ability, telling me the truth at the time, that he was not fabricating this.

Taken in context, we conclude that Dr. Varley's testimony was to the effect that the defendant's telephone call stating that he had killed his wife, made approximately fifteen minutes after he had done so, did "conflict with the whole notion of amnesia."

STATE v. SHANK

[327 N.C. 405 (1990)] ·

We further conclude that the prosecutor did not misstate the evidence, but simply drew a permissible inference from it, when he argued that Dr. Varley had testified that the telephone call would *tend* to show that the defendant's claim of amnesia *might* not be valid. It is true, of course, that despite any such possibility, Dr. Varley continued to draw the conclusion that the defendant suffered from amnesia at the time of trial concerning the events surrounding the killing of his wife. Nevertheless, the prosecutor's argument did not mischaracterize the evidence and, at most, drew a permissible inference from Dr. Varley's testimony. Therefore, we find this argument by the defendant to be without merit.

[2] The defendant next contends that the prosecutor improperly argued incompetent matters outside the record when he made the argument that:

> They say, "Oh, John Shank is a good man. It's not in his nature to kill people." Ladies and gentlemen, good people don't get one free killing. John Shank's life had been going downhill ever since he met Carolyn Lawrence over there at Eaton. He was running around with her and going by her house while he was still living with his wife. Downhill, downhill, downhill.
>
> You read newspapers, you watch television. How many killings do you know of where a man is involved with a couple of women and the only thing left is to kill one of them?
>
> MR. PAKSOY: OBJECTION.
>
> . . . That's as good a motive as any. We don't have to prove motive. Listen to the Judge. He won't say the State of North Carolina has to prove motive. But you as reasonable people can find that that was pretty much on his mind, too. "What am I going to do with this mistress and this wife and try and get my children back and all of this?"

Initially, we note that much of the prosecutor's argument tended to rebut arguments that counsel for the defendant had made in his closing argument to the jury; those arguments were to the effect that the defendant would not have killed his wife in order to get custody of his children and that his affair with Carolyn Lawrence did not mean that he was guilty of murder. Further, the prosecutor's argument was based upon reasonable inferences from the evidence and was otherwise proper.

STATE v. SHANK

[327 N.C. 405 (1990)]

The prosecutor's reference in his argument to newspapers and television, while not desirable or well advised, did not amount to an improper argument in the context in which it was made. Taken in context, we conclude that this argument merely called upon the jurors to draw upon their common sense and life experiences in order to recognize that a heightened likelihood of, and motive for, violence and even killing arises in a situation in which a married man has an affair with another woman. In this regard, the prosecutor's argument simply called upon the jury to apply the "commonsense judgment of the community." *Taylor v. Louisiana*, 419 U.S. 522, 530, 42 L. Ed. 2d 690, 698 (1975). This is a proper function for the jury and one of the reasons for the jury system. *State v. Scott*, 314 N.C. 309, 311-12, 333 S.E.2d 296, 297-98 (1985). Although the prosecutor would have been better advised to make his appeal directly to the jury's own common sense and knowledge drawn from life experiences without reference to any outside sources, we do not believe that the argument was so improper as to require a new trial, particularly in light of the fact that the prosecutor was engaged in rebutting the prior closing argument of counsel for the defendant. *See State v. Noell*, 284 N.C. 670, 202 S.E.2d 750 (1974), *vacated in part on other grounds*, 428 U.S. 902, 49 L. Ed. 2d 1205 (1976) (mem.).

The defendant further contends that this part of the prosecutor's argument went beyond the evidence and was improper because "there was no evidence presented to support the inference that John Shank killed his wife to make room for his relationship with Carolyn Lawrence." We find this argument without merit. First, the prosecutor's argument in this regard was directly responsive to the closing argument of counsel for the defendant to the effect that the fact that the defendant was having an affair with Carolyn Lawrence did not prove that he had planned to kill anyone. The prosecutor was entitled to rebut that argument by counsel for the defendant. *See id.* Additionally, it appears from the record to be uncontroverted that the defendant was having an affair with Carolyn Lawrence and left her bed on the morning of 6 January 1986 to go to kill his wife. Therefore, the prosecutor's argument that the defendant's affair with Lawrence was a motive for the killing was one legitimate inference to be drawn from the evidence, and the prosecutor's argument to that effect was not improper.

For the foregoing reasons, we conclude that the defendant received a fair trial free of prejudicial error.

No error.