STATE OF NORTH CAROLINA v. JERRY DALE ERLEWINE

No. 398A90

(Filed 2 May 1991)

1. **Criminal Law § 421 (NCI4th)— prosecutors' closing arguments—objection sustained and jury instructed**

The trial court in a prosecution for murder, burglary, robbery, and assault cured any error that may have been present in certain of the prosecutors' closing arguments by sustaining defendant's objections and instructing the jury to disregard those arguments. It must be assumed that the jury heeded the instructions and did not consider the arguments to the defendant's prejudice.

Am Jur 2d, Trial § 317.

2. **Criminal Law § 425 (NCI4th)— prosecutors' closing arguments—failure of defendant to contradict the State's evidence**

The prosecutors' closing arguments in a trial for murder, burglary, robbery, and assault were fair and proper commentary on the defendant's failure to present any evidence where the record shows that the prosecutors never commented directly on the defendant's failure to testify or suggested that the defendant should have or even could have taken the witness stand. The State may not comment upon defendant's failure to testify, but may draw the jury's attention to the failure of the defendant to produce exculpatory evidence or evidence to contradict the State's case.

Am Jur 2d, Trial §§ 237-244.

Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify. 14 ALR3d 723.

3. **Criminal Law § 444 (NCI4th)— prosecutor's closing argument—personal opinion**

The District Attorney did not express a personal opinion regarding the guilt of defendant in a prosecution for murder, burglary, robbery, and assault, but merely asked the jury to find facts and to draw permissible inferences based upon substantial competent evidence introduced during trial.

**Am Jur 2d, Trial § 261.**

**Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused — modern state cases. 88 ALR3d 449.**

4. **Criminal Law § 446 (NCI4th) — prosecutor's closing arguments — community sentiment**

Although the prosecutor in a trial for murder, burglary, robbery, and assault improperly encouraged the jury to follow his view of the sentiment of the community rather than the evidence, the law and their own views in acting as a voice and conscience of the community, there was no prejudice because the trial court promptly sustained the defendant's objections and instructed the jury on more than one occasion when the District Attorney made similar statements, and the evidence against defendant was overwhelming. The State must not ask the jury to lend an ear to the community; however, encouraging the jury to act as the voice and conscience of the community is proper. District Attorneys are cautioned to pay strict attention to the line between proper and improper arguments concerning the jury's relationship to the State and community.

**Am Jur 2d, Trial §§ 225, 226, 317.**

5. **Criminal Law § 794 (NCI4th) — acting in concert — instruction proper**

There was no error in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury in instructing the jury on acting in concert where the defendant failed to object to the trial court's instructions. It is only necessary that there be a common purpose to commit a crime; it is not strictly necessary that the defendant share the intent or purpose to commit the particular crime actually committed.

**Am Jur 2d, Criminal Law §§ 168 et seq.; Trial § 724.**

6. **Criminal Law § 1178 (NCI4th) — aggravating factor — position of trust or confidence — drug dealer and customer — erroneous**

The trial court erred in finding in aggravation when sentencing defendant for burglary that defendant took advantage of a position of trust or confidence where that finding was

based on evidence that defendant was a regular cocaine customer of the victim. N.C.G.S. § 15A-1340.4(a)(1)n (1988).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**7. Criminal Law § 1135 (NCI4th) — assault — aggravating factor — inducement and position of leadership**

The trial court did not err when sentencing defendant for assault with a deadly weapon with intent to kill inflicting serious injury by finding in aggravation that defendant induced others to commit the crime and that he occupied a position of leadership or dominance over the other participants. The evidence that defendant initially invited Lynch to accompany him to carry out his criminal plan, together with his direction to Lynch to "take care" of Cox, supports the finding that defendant induced Lynch to commit the assault upon Cox, and separate evidence that defendant directed Lynch to take Cox to the bedroom and to tie her up supports the finding that defendant occupied a position of leadership during the assault upon Cox.

**Am Jur 2d, Criminal Law §§ 598, 599.**

APPEAL as of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment for first degree murder, entered by *Long, J.,* on 7 December 1989, in Superior Court, GUILFORD County. On 17 August 1990, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on his appeal from additional judgments imposing sentences of less than life imprisonment. Heard in the Supreme Court on 13 March 1991.

*Lacy H. Thornburg, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia Devine and Constance H. Everhardt, Assistant Appellate Defenders, for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Jerry Dale Erlewine, was tried upon proper bills of indictment charging him with the armed robbery and murder of David Lee Carlisle, first degree burglary of Carlisle's residence, armed robbery of Patricia Ann Cox and assault upon Cox with

STATE v. ERLEWINE

[328 N.C. 626 (1991)]

a deadly weapon with intent to kill inflicting serious injury. The jury found the defendant guilty of first degree murder on theories of premeditation and deliberation and felony murder, and also returned verdicts finding him guilty of first degree burglary, two counts of robbery with a firearm, and assault with a deadly weapon with intent to kill inflicting serious injury. After a sentencing proceeding under N.C.G.S. § 15A-2000, the jury recommended life imprisonment for the first degree murder conviction. The trial court sentenced the defendant to life imprisonment for the murder and to consecutive prison terms of forty-six years for the first degree burglary, thirty-six years for each count of armed robbery, and twenty years for assault with a deadly weapon with intent to kill inflicting serious injury.

On appeal, the defendant brings forward four assignments of error. First, he contends that the prosecutors committed gross improprieties during their closing arguments which deprived him of a fair trial. Second, he argues that the trial court committed plain error in its instructions to the jury on acting in concert and assault with a deadly weapon with intent to kill inflicting serious injury. Third, he maintains he is entitled to a new sentencing hearing on the charge of first degree burglary because the evidence of the aggravating factor that he "took advantage of a position of trust or confidence to commit the offense" was insufficient as a matter of law. Finally, he contends that with regard to the assault charge, the trial court erroneously used the same evidence to support two aggravating factors. We find no error in the guilt phase of the trial, but we remand for new sentencing on the first degree burglary charge.

The State's evidence tended to show that during October 1988, David Carlisle and Patricia Cox lived together in a mobile home on a dirt road in Mount Airy. Shelley Massey and Tina Simmons Kittle lived together in a mobile home at the end of the same dirt road. Carlisle and Cox sold cocaine at their mobile home, and the defendant regularly purchased cocaine there.

Around mid-October 1988, the defendant told Shelley Massey that he was going to rob Carlisle. On the 23rd or 24th of October 1988, the defendant also told Tina Simmons Kittle that he was going to rob Carlisle. The defendant had made similar statements on at least ten other occasions. Sometime after the defendant made

STATE v. ERLEWINE

[328 N.C. 626 (1991)]

the threats on the 23rd or 24th of October, Massey and Kittle warned Cox and Carlisle to be leery of the defendant.

On the evening of 25 October 1988, the defendant and Joey Lynch injected cocaine. Lynch then drove the defendant to Lenore Foster's mobile home where all three injected cocaine. After they had injected the cocaine, the defendant told the others that he knew where they could get more cocaine and asked whether either of them had a gun. Lynch provided Foster's shotgun and one shell. The defendant and Lynch then drove Foster's truck to Pilot Mountain where the defendant entered Kenny Olievy's house and exited with a sawed-off double-barreled shotgun. The defendant and Lynch agreed to go to Carlisle's house, induce Carlisle to open the door by knocking, then burst in and demand Carlisle's money and cocaine.

Around midnight, the defendant and Lynch parked near Tina Kittle's mobile home, then walked to Carlisle's mobile home with guns in hand. The defendant knocked on the door, but he received no response. He then went to the back window, knocked and told someone inside that he had the money that he owed. Carlisle opened the door, and the defendant and Lynch entered the mobile home. The defendant offered to barter his gun for cocaine. Carlisle then examined the gun, but he rejected the offer. At this point, Carlisle's telephone rang. Patricia Cox answered on a telephone in the bedroom. Tina Kittle was calling to speak to Carlisle. When Carlisle left the room to answer the telephone, the defendant told Lynch that he was going to shoot Carlisle when he came back into the room and that he did not want to leave any witnesses. The defendant also told Lynch to take care of Cox and the defendant would take care of Carlisle. Lynch suggested that defendant wait until after they got the cocaine.

When Carlisle returned, he and the defendant began arguing about the money the defendant owed him. Lynch then stood, pointed his gun at Carlisle and demanded Carlisle's cocaine and money. As their voices grew louder, Patricia Cox entered the living room. The defendant and Lynch each held a gun aimed at Carlisle. As Cox entered the room, Lynch aimed his gun at her and told her to sit down. The defendant demanded Carlisle's cocaine, and Lynch demanded money. Cox led Lynch to the bathroom where the cocaine was hidden in a "Crown Royal" duffle bag inside a heating vent. Lynch held his gun barrel against Cox's neck as they walked through the mobile home. The "Crown Royal" bag contained about an ounce

of cocaine, some marijuana, a small scale and a spoon. Lynch demanded Cox's purse, and she gave it to him. The purse contained about $2,000.

The defendant and Lynch directed Carlisle and Cox at gunpoint to the bedroom. They forced Cox and Carlisle to lie on the bed on their backs. The defendant bound Carlisle's hands together with a leather belt. He told Lynch to tie up Cox, but Lynch was unable to find anything with which to tie her. During this time, Carlisle was saying, "Don't hurt her. You don't have to do this." The defendant then nodded toward Lynch, Cox raised her hand to her face, and Lynch shot her. As Carlisle stood up to protest, the defendant pulled one trigger of Olievy's double-barreled shotgun, but it did not fire. The defendant struck Carlisle in the back of the head with the gun barrel, and Lynch struck Carlisle on the stomach with his gun. The defendant then pulled the other trigger, and the resulting gun blast hit Carlisle in the face and sent him to the floor. The defendant and Lynch ran from the mobile home carrying the "Crown Royal" bag, the purse, Carlisle's wallet and their guns.

Cox remained conscious and called the police. The gun blast had penetrated her left hand and left eye, tearing away part of her face and blowing out six teeth. Carlisle was dead at the scene. He was killed by the shotgun wound to his face.

On 26 October 1988, Leila Dickson, Lynch's sister, took Lynch and the defendant out of town where they dumped two duffle bags near Belews Creek. Dickson then drove to Winston-Salem where she left the defendant. On 29 October 1988, the defendant was arrested in Winston-Salem.

The defendant did not present any evidence.

[1] By his first assignment of error, the defendant contends that during their closing arguments, District Attorney H. Dean Bowman and Assistant District Attorney James C. Yeatts III improperly invoked community sentiment, expressed their personal opinions on the defendant's guilt and on the credibility of witnesses, improperly commented upon the defendant's failure to testify, his not guilty plea, the presumption of innocence and the role of the defense counsel, and abused the defendant personally. The defendant contends that such arguments constituted gross improprieties and deprived him of a fair trial. We disagree.

STATE v. ERLEWINE

[328 N.C. 626 (1991)]

We have repeatedly held that arguments of counsel are left largely to the control and discretion of the trial court and that counsel will be allowed wide latitude in the argument of hotly contested cases. *E.g., State v. Shank*, 327 N.C. 405, 407, 394 S.E.2d 811, 813 (1990). As to several of the arguments at issue, the trial court sustained objections by defense counsel and instructed the jury not to consider those arguments. We must assume the jury heeded the instructions and did not consider the arguments to the defendant's prejudice. *North Carolina State Highway Com. v. Pearce*, 261 N.C. 760, 763, 136 S.E.2d 71, 73 (1964). Hence, by sustaining the objections and instructing the jury to disregard those arguments, the trial court cured any error that may have been present in those arguments. *State v. Small*, 328 N.C. 175, 185-86, 400 S.E.2d 413, 418 (1991); *State v. Woods*, 307 N.C. 213, 222, 297 S.E.2d 574, 579 (1982). Therefore, we will not address those arguments in this opinion.

[2]    In other arguments at issue, Assistant District Attorney Yeatts said, in his portion of the State's closing argument,

Using those same tests what really has this case been for the number of days that the State of North Carolina has presented uncontradicted evidence? Uncontradicted. There is a lot of difference between denying and contradicting. That evidence is uncontradicted.

District Attorney Bowman emphasized a similar theme in his closing argument:

One thing is, however, for certain in this case. Excuse me. Whatever they argue and whatever they contend it's going to have to be the State of North Carolina's case that they're talking about, isn't it? For obvious reasons.

[DEFENSE COUNSEL]: Objection.

[MR. BOWMAN]: Because the State's case is uncontradicted.

[THE COURT]: Overruled.

[MR. BOWMAN]: There is a big difference in denying and contradicting. You can see me stand right here and kick this podium over, and I can deny it from now on, can't I?

[DEFENSE COUNSEL]: Objection.

[THE COURT]: Overruled.

[MR. BOWMAN]: There is a huge difference between deny-
ing and contradicting. The defendant would like nothing better
than for you to forget all the uncontradicted and sworn testimony
that you heard here in the past week.

. . . .

[MR. BOWMAN]: If you think about it and think through
it there is not one scintilla of evidence to contradict anything,
any testimony or any exhibits presented by the State in this
case. There is not one. Think about that when you go back
there and deliberate.

The defendant contends that by arguing that the State's evidence
was uncontradicted, the prosecutors were improperly commenting
on the defendant's exercise of his right not to testify. The record
belies that argument. The record shows that the prosecutors never
commented directly on the defendant's failure to testify or sug-
gested that the defendant should have or even could have taken
the witness stand. Thus, the prosecutors' arguments were fair and
proper commentary on the defendant's failure to present any
evidence. *State v. Tilley*, 292 N.C. 132, 143, 232 S.E.2d 433, 441
(1977). The State may not comment upon the defendant's failure
to testify but may draw the jury's attention to the failure of the
defendant to produce exculpatory evidence or evidence to contradict
the State's case. *Id.*

[3] The defendant also contends that District Attorney Bowman
injected his personal opinion in his closing argument by stating:

What else would you have the State do? I don't know what
it is. Evidence is as clear as I know how to make it clear
what the truth is in this case. The defendant's guilty of burglary,
guilty of two armed robberies. Under the theory of acting
in concert, he's guilty of blowing that woman's face off. And
beyond all that he's guilty of first degree murder.

Such remarks were proper, given the evidence introduced in this
case. District Attorney Bowman was not expressing a personal
opinion regarding the guilt of the defendant, but merely asking
the jury to find facts and draw permissible inferences based upon
substantial competent evidence — most of it eyewitness testimony
by Cox, the surviving victim — introduced during the trial.

[4] The defendant also contends the prosecutors improperly invoked community sentiment in their closing arguments. For example, addressing evidence that the defendant was under the influence of cocaine when the crimes at issue were committed, District Attorney Bowman said,

> Do you think he would care if that were the reason you cut him loose? Certainly not. He'd be just as happy on the other side of that door for that reason as any other. Now, that's one thing probably, I contend, that *the people of the State of North Carolina and certainly the people of Surry County are sick and tired of.*

(Emphasis added.) The defendant contends the District Attorney was asking the jury to heed public sentiment and to appease community outrage by convicting the defendant; such an argument would be improper. The State must not ask the jury "to lend an ear to the community rather than a voice." *State v. Scott*, 314 N.C. 309, 312, 333 S.E.2d 296, 298 (1985) (quoting *Prado v. State*, 626 S.W.2d 775, 776 (Tex. Crim. 1982)). However, encouraging the jury to act as the voice and conscience of the community is proper and is one of the very reasons for the establishment of the jury system. *Id.* at 311-12, 333 S.E.2d at 298.

The argument by District Attorney Bowman, which is quoted above, crossed the line into impropriety by encouraging the jury to follow his view of the sentiment of the community rather than the evidence, the law and their own views in acting as the voice and conscience of the community. District Attorneys would be wise to remember that jurors are the community, for purposes of the trial, and they will know without assistance what the "community is sick and tired of."

Although the trial court erred in overruling the defendant's objection to the District Attorney's argument, we conclude that the error does not warrant a new trial. On more than one occasion, when the District Attorney made similar statements, the trial court promptly sustained the defendant's objections and instructed the jury that it was not to consider such arguments. In light of those actions by the trial court, and considering the overwhelming evidence against the defendant in the present case, we conclude that the improper argument by District Attorney Bowman could not have affected the outcome in this case. Therefore, the trial court's lapse into error in this instance was not prejudicial to the defendant.

We caution our District Attorneys, however, to pay strict attention to our prior efforts to draw the line between proper and improper arguments concerning the jury's relationship to the state and community. *E.g.*, *Scott*, 314 N.C. 309, 333 S.E.2d 296.

[5] The defendant next contends that the trial court committed plain error in its instructions to the jury on acting in concert and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court gave the following instruction regarding the theory of acting in concert:

> Now, members of the jury, I instruct you that you should be aware of the law which provides that for a person to be guilty of a crime it is not necessary that he himself do all the acts necessary to constitute that crime. If two or more persons act together *with a common purpose to commit a crime* each of them is held responsible for the acts of the others done in the commission of that crime. This is known in the law as acting in concert.

(Emphasis added.) The trial court also instructed the jury on the elements of assault with a deadly weapon with intent to kill inflicting serious injury as follows:

> I instruct you that for you to find the defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury the State must prove four things beyond a reasonable doubt. First, that the defendant *or someone with whom he was acting in concert assaulted Patricia Ann Cox by intentionally shooting her.*

> Second, that the assault was by use of a deadly weapon.

> . . . .

> Thirdly, the state must prove beyond a reasonable doubt that the assault was committed with the specific intent to kill Patricia Ann Cox.

> And fourth, that such assault did, in fact, inflict serious injury. . . .

> So, members of the jury, as to this charge if you find from the evidence beyond a reasonable doubt that on or about the date in question *the defendant or someone with whom he was acting in concert intentionally shot Patricia Ann Cox*

*with a shotgun with the specific intent to kill her,* and that the shooting did seriously injure her, or did inflict serious injuries, then it would be your duty to return a verdict of guilty of assault with a deadly weapon with intent to kill inflicting serious injury.

(Emphasis added.)

The defendant contends that the trial court's instructions permitted the jury to find him guilty of assault with a deadly weapon with intent to kill inflicting serious injury if the jury found that his accomplice, Joey Lynch, but not the defendant, had the specific intent to kill Cox. The defendant argues that the instructions thereby erroneously relieved the State of its burden to prove that the defendant had the required *mens rea* to commit the crime. We disagree.

First, we must point out that the defendant failed to object to the trial court's instructions; therefore, our review is limited to review for plain error. *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

We have emphasized that:

[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Id.* at 660, 300 S.E.2d at 378 (quoting with approval *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982) ). Before deciding that an error by the trial court amounts to plain error, the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. *State v. Walker,* 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). In other words, the appellate court

STATE v. ERLEWINE

[328 N.C. 626 (1991)]

must determine that the error in question "tilted the scales" and caused the jury to convict the defendant. *Id.*

In the case at hand, our review of the instructions complained of reveals no error and certainly no plain error. The theory of acting in concert, as properly defined by the trial court, requires a common purpose to commit a crime. *State v. Joyner,* 297 N.C. 349, 255 S.E.2d 390 (1979). Thus, before the jury could apply the law of acting in concert to convict the defendant of the crime of assault with a deadly weapon with intent to kill inflicting serious injury, it had to find that the defendant and Lynch had a common purpose to commit *a* crime; it is not strictly necessary, however, that the defendant share the intent or purpose to commit the particular crime actually committed. Instead, the correct statement of the law is found in trial court instructions which we have held in a prior case to be without error:

> [I]f "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof."

*State v. Westbrook,* 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971), *death sentence vacated,* 408 U.S. 939, 33 L. Ed. 2d 761 (1972). Viewed in the light of this correct statement of the law of acting in concert, the trial court's instructions in the present case contained neither error nor plain error.

[6] By his next assignment of error, the defendant contends he is entitled to a new sentencing hearing on the charge of first degree burglary because the State's evidence of the aggravating factor that he "took advantage of a position of trust or confidence to commit the offense" was insufficient as a matter of law. We agree.

The presumptive term for the Class C felony of first degree burglary is fifteen years, but the trial court sentenced the defendant to a prison term of forty-six years for this offense. In sentencing the defendant for this offense, the trial court found as an aggravating factor that the defendant "took advantage of a position of trust or confidence to commit the offense." *See* N.C.G.S. § 15A-1340.4(a)(1)n (1988).

STATE v. ERLEWINE

[328 N.C. 626 (1991)]

At the sentencing hearing, the defendant testified that he had been to Carlisle's home on numerous occasions and was one of Carlisle's regular cocaine customers. Carlisle trusted the defendant to the point of selling him cocaine on credit at times. The State contends that this evidence supports the trial court's finding that the defendant took advantage of a position of trust or confidence in committing the offense. Although such evidence certainly demonstrates an unusually close relationship between the defendant and the victim, we conclude that their relationship simply did not put the defendant in the type of "position of trust or confidence" envisioned by the legislature in establishing the aggravating factor set forth in N.C.G.S. § 15A-1340.4(a)(1)(n). To apply that aggravating factor to an ongoing criminal conspiracy between a drug dealer and his customer would give the aggravating factor an application so broad that it would retain little meaning. Thus, we conclude that the trial court erred in finding that aggravating factor in the present case. Accordingly, the sentence entered on the first degree burglary judgment must be vacated and the defendant must receive a new sentencing hearing on that conviction.

[7] Finally, we turn to the defendant's assignment of error regarding the sentence he received for assault with a deadly weapon with intent to kill inflicting serious injury. The trial court found as factors in aggravation of that crime that the defendant induced others to commit the crime *and* that he occupied a position of leadership or dominance over the other participants in the commission of the offense. N.C.G.S. § 15A-1340.4(a)(1)(a). The defendant argues that the trial court erred by finding the two aggravating factors because the evidence indicating that the defendant induced Joey Lynch to commit the assault on Patricia Cox was the same evidence which indicated the defendant led or dominated Lynch in the commission of the offense. We disagree.

This Court has upheld the division of the aggravating factor set forth in N.C.G.S. § 15A-1340.4(a)(1)(a) into two aggravating factors, so long as there is separate evidence to support each. *State v. Miller*, 315 N.C. 773, 781-82, 340 S.E.2d 290, 295 (1986). In the case at hand, the evidence that the defendant initially invited Lynch to accompany him to carry out his criminal plan that evening, together with his direction to Lynch to "take care" of Cox, supports the trial court's finding that the defendant induced Lynch to commit the assault upon Cox. Separate evidence that the defendant directed Lynch to take Cox to the bedroom and to tie her up, which were

the last activities in preparation for shooting Cox, supports the trial court's finding that the defendant occupied a position of leadership during the assault upon Cox. Separate evidence supports the trial court's finding of each factor; therefore, this assignment of error is without merit.

For the foregoing reasons, we conclude that the guilt phase of the defendant's trial was free of prejudicial error, but that the sentence imposed for first degree burglary must be vacated, and the defendant must be resentenced for that conviction only.

First Degree Murder, Armed Robbery (2 counts), Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Bodily Injury—Surry County Case Nos. 88CRS5692, 5694, 5695, 5696—no error.

First Degree Burglary—Surry County Case No. 88CRS5693 —Guilt Phase, no error; sentence vacated and remanded for resentencing.