IN THE SUPREME COURT OF NORTH CAROLINA

No. 343A19

Filed 18 December 2020

IN THE MATTER OF: J.D.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 267 N.C. App. 11 (2019), vacating an adjudication order entered on 13 November 2017 and a disposition order entered on 23 January 2018 by Judge Tabatha P. Holliday in District Court, Guilford County. Heard in the Supreme Court on 2 September 2020.

*Joshua H. Stein, Attorney General, by Stephanie A. Brennan, Special Deputy Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Amanda S. Zimmer, Assistant Appellate Defender, for defendant-appellee.*

BEASLEY, Chief Justice.

This Court is tasked with determining the sufficiency of evidence needed to survive a motion to dismiss a juvenile petition alleging that the juvenile committed second-degree sexual exploitation of a minor under an acting in concert theory and a juvenile petition alleging that the juvenile committed first-degree forcible sexual offense when the victim denies that penetration occurred. We must also determine the sufficiency of evidence required before a trial court can accept a juvenile's transcript of admission. We hold that the trial court erred by denying the juvenile's motions to dismiss second-degree sexual exploitation of a minor and first-degree

forcible sexual offense but did not err by accepting the juvenile's admission of attempted larceny.[1] This holding also requires us to vacate the Level 3 disposition and commitment order entered by the trial court. However, we cannot remand the matter for the entry of a new disposition order because the trial court's jurisdiction terminated when the juvenile turned eighteen years old.

**Factual and Procedural Background**

This case stems from an incident at Jeremy's[2] house on 18 November 2016. Zane, age 13, spent the night with Jeremy, age 15, and Jeremy's cousins, Carl, age 12, and Dan, age 13. Jeremy's parents were home and the juveniles spent the evening playing outside and playing video games. At some point during the night Jeremy engaged in sexual contact against Zane's will, and Dan recorded a portion of the incident.

The video recording is twenty-one seconds long and does not show how the incident began or ended. During the entire recording Jeremy and Zane both have their pants pulled down and Zane is bent over a piece of furniture with Jeremy behind him performing a thrusting motion. Jeremy can be heard saying "you better not be recording this" and "[Dan] do not record this." Jeremy continued the thrusting motion

---

[1] The Court of Appeals also held that the trial court erred by entering a Level 3 disposition and commitment order and denying the juvenile's motion for release pending his appeal. Because we are vacating the trial court's Level 3 disposition and commitment order, we do not address these additional issues.

[2] Pseudonyms are used throughout the opinion to protect the juveniles' identities and for ease of reading.

and began to pull on Zane's hair, and Zane told Jeremy to "let go of [his] hair." Towards the end of the recording, Jeremy reaches for Zane's shirt with his left hand and lifts his left thumb from his fist. It is unclear whether he is giving a "thumbs up" or simply made a motion while grabbing Zane's shirt.

Dan sent the video to two people, and one of Zane's friends told Zane's father about the video. Zane was unaware the video was circulated to others, and Zane's mother called law enforcement once Zane's family became aware of the video. Law enforcement officers interviewed Jeremy, Dan, and Carl. Jeremy indicated that whatever occurred between him and Zane was consensual. He admitted that his penis touched Zane's "butt" but denied that any penetration occurred. Dan indicated that Jeremy and Zane were "doing it" and having "sex." He stated that nobody asked him to record the video and admitted to sending the video to two other people. Carl told law enforcement that he was in the room but covered his eyes once Jeremy's and Zane's pants were pulled down. He indicated that he told them to stop and it seemed like they were having sex.

Juvenile petitions were filed against Jeremy for second-degree sexual exploitation of a minor and first-degree forcible sexual offense. Petitions were also filed against Carl and Dan. While the initial petitions were pending, a separate petition was filed against Jeremy for misdemeanor larceny.

The adjudicatory hearing for the petitions against Jeremy, Dan, and Carl for the incident on 18 November 2016 were held jointly without objection on 4 October

2017 and 1 November 2017. At the hearing, Zane testified that after playing video games he went to sleep and "woke up and [Jeremy] was behind me" and he "felt somebody holding [his] legs." He testified that his pants were pulled down and Jeremy was pulling on his hair. He "felt [Jeremy's] privates on [his] butt" but testified he did not feel Jeremy "go into [his] butt."

During Zane's testimony, the State introduced and played the video recording of the incident. The State also introduced and admitted, without objection, recordings of the statements made by Dan and Carl to law enforcement. Neither Dan nor Carl testified during the adjudicatory hearing.

At the close of the State's evidence, all juveniles made a motion to dismiss, which the trial court denied. These motions were renewed at the close of all of the evidence and were again denied by the trial court.

The trial court adjudicated Jeremy and Dan delinquent for the offenses of first-degree forcible sexual offense and second-degree sexual exploitation of a minor. It also found Dan delinquent for the offense of felony disseminating obscenity. The disposition hearing was continued until 24 January 2018 so Jeremy could have a psychosexual assessment at Children's Hope Alliance to identify Jeremy's sex-specific risk factors and determine treatment recommendations to be considered by the trial court at the disposition hearing.

At the dispositional hearing, the State asked for a Level 3 disposition and Jeremy's defense counsel asked for a Level 2 disposition. Jeremy's court counselor

recommended a Level 2 disposition, and both Children's Hope Alliance and the court counselor recommended that Jeremy complete specialized sex-offender specific treatment.

Jeremy also entered a transcript of admission for misdemeanor attempted larceny. After Jeremy entered his transcript of admission on the record, the State gave the following factual basis:

> The date of offense on this matter is April 7th, 2017. [The victim] reported that his bicycle had been stolen. Police came, and witnesses said that two black males, giving descriptions, had taken the bike by using bolt cutters to cut the chain that secured it.
>
> And shortly after that, the—the responding officer saw three folks somewhat matching that description riding two bicycles. So, two were on one bicycle, one was on the other bicycle, kind of off on his own. That one off on his own on a bicycle turned out to be [Jeremy]. He's the only one who stopped and was willing to talk with the officer.
>
> He said that he had nothing to do with the theft of the bicycle, gave the name of the person who did, and he did admit to having the bolt cutters in his back pack.

Jeremy's defense counsel told the trial court that Jeremy was with the "wrong people" at the "wrong time" but had "accepted responsibility" for his role.

After accepting Jeremy's admission, the trial court entered a Level 3 disposition and committed Jeremy to a youth development center based on his adjudication for first-degree forcible sexual offense. On 14 February 2018 Jeremy filed a notice of appeal and requested release pending appeal. The trial court held a hearing on 20 February 2018 and denied Jeremy's request for release pending appeal.

On appeal, Jeremy argued that (1) there was insufficient evidence to support a finding that Jeremy committed second-degree sexual exploitation of a minor; (2) there was insufficient evidence to support a finding that Jeremy committed first-degree forcible sexual offense; (3) the trial court violated his right to confront his accusers by allowing the admission of out-of-court statements by Jeremy's codefendants; (4) the trial court erred by considering out-of-court statements as substantive evidence; (5) the trial court erred by failing to make written findings showing it considered all five factors under N.C.G.S. § 7B-2501 prior to entering its disposition order; and (6) the trial court erred by finding compelling reasons why Jeremy should remain in custody while his appeal is pending.

On 20 August 2019 the Court of Appeals issued a divided opinion reversing and remanding the adjudication and disposition orders of the trial court. *In re J.D.,* 267 N.C. App. 11 (2019). The majority held that the trial court erred by denying Jeremy's motion to dismiss his second-degree sexual exploitation of a minor charge because he told Dan to stop recording and there was no evidence that Jeremy wanted the recording to be made. *Id.* at 15. Because there was no evidence that Jeremy "took an active role in the production or distribution of the video," the trial court erred by denying his motion to dismiss the second-degree sexual exploitation of a minor charge. *Id.*

The majority went on to conclude that there was not substantial evidence of anal penetration and that because Zane testified that no penetration occurred and

the video did not show a "sexual act," the trial court erred by denying Jeremy's motion to dismiss the charge of first-degree forcible sexual offense. *Id.* at 16–17.

The majority further concluded that the trial court erred by accepting the admission to attempted larceny because "[t]here was not a showing of the requisite intent that defendant intended to steal, or assist others in stealing, the bicycle." *Id.* at 17. Because the State failed to present sufficient evidence that Jeremy attempted to steal the bicycle, the trial court erred in accepting Jeremy's admission of attempted larceny. *Id.*

The majority next addressed the statements made by Jeremy's codefendants who did not testify at the adjudicatory hearing. The majority concluded that these statements violated Jeremy's constitutional right to confront and cross-examine witnesses and were ultimately prejudicial to Jeremy's defense, that the evidence at trial was not overwhelming, and that "the State has failed to prove this testimony was harmless beyond a reasonable doubt." *Id.* at 18–19.

Although the majority held that the adjudications must be reversed, it nonetheless addressed disposition errors made by the trial court. *Id.* at 19–21. It concluded that the trial court erred by entering a Level 3 disposition because it "failed to effectively explain its decision" to ignore evaluations from the court counselor and Children's Hope Alliance recommending a Level 2 disposition and it failed to "explain how its findings satisfied all of the factors required by N.C. Gen. Stat. § 7B-2501(c)." *Id.* at 21.

Finally, the majority held that the trial court "did not list independent compelling reasons" when it denied Jeremy's motion for his release while his appeal was pending. *Id.* at 22. It described this failure as "especially disturbing" because it "caus[ed] the juvenile to be held in detention for a period of 17 months when his convictions were improper." *Id.*

The dissenting judge argued that "the evidence was sufficient to support the trial court's findings and its ultimate order" and that the trial court's order should be affirmed. *Id.* at 23 (Dillon, J., dissenting). The dissenting judge argued there was sufficient evidence of first-degree forcible sexual offense because of Jeremy's statements and the video recording, which showed "sufficient *circumstantial* evidence of penetration." *Id.* at 26. The dissenting judge further argued that the trial court did not err by denying Jeremy's motion to dismiss his second-degree sexual exploitation of a minor charge because "a fact-finder could certainly infer from Jeremy's tone and the position of the cellphone that Jeremy knew that he was being recorded and was in approval of the recording." *Id.* at 30.

The dissenting judge next addressed the admission of Jeremy's codefendants' statements into evidence. The dissenting judge argued that the State had the burden of showing that the trial court's error was harmless beyond a reasonable doubt and the State met its burden because "the trial court made its finding regarding penetration based on the video itself" rather than the codefendants' statements. *Id.* at 31–32.

The dissenting judge next argued that the trial court did not err by accepting Jeremy's admission to attempted larceny because the State's recitation of the facts was "sufficient to show that Jeremy directly participated, or at least acted in concert, in the commission of the attempted theft of the bicycle." *Id.* at 32.

The dissenting judge next argued that the trial court did not err by entering a Level 3 disposition. *Id.* at 35–36. That judge argued that the trial court's findings were "appropriate" under N.C.G.S. § 7B-2501, supported by the evidence, and sufficient to support the trial court's Level 3 disposition. *Id.* at 34–35. The dissenting judge concluded by arguing that the trial court stated sufficient compelling reasons in support of Jeremy's continued confinement pending his appeal. *Id.* at 37.

## Analysis

For the reasons stated below, we conclude that the trial court erred as a matter of law by denying Jeremy's motion to dismiss his second-degree exploitation of a minor charge and his first-degree forcible sexual offense charge.[3] The adjudication

---

[3] The State argues that Jeremy failed to preserve a motion to dismiss based on insufficient evidence of penetration because "he made a very specific motion to dismiss at the close of all evidence based only on lack of aiding and abetting—without raising lack of penetration." Our recent decision in *State v. Golder,* 374 N.C. 238 (2020), discussed the distinction between a general motion to dismiss and a specific motion to dismiss. We found that "merely moving to dismiss at the proper time under Rule 10(a)(3) preserves *all* issues related to the sufficiency of the evidence for appellate review." *Id.* at 249. We concluded that attempting to "categorize motions to dismiss as general, specifically general, or specific, and to assign different scopes of appellate review to each category" would be inconsistent with Rule 10(a)(3) of our North Carolina Rules of Appellate Procedure. *Id.* Therefore, all issues related to the sufficiency of the State's evidence were properly preserved by Jeremy's motions to dismiss at the close of the State's evidence and at the close of all evidence.

order and Level 3 disposition order must be vacated. We further hold that the trial court did not err by accepting Jeremy's attempted-larceny admission but that the trial court lacks jurisdiction to enter a new dispositional order.

This Court reviews de novo a trial court's denial of a motion to dismiss for insufficiency of the evidence to determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *In re T.T.E.,* 372 N.C. 413, 420 (2019) (quoting *State v. Turnage,* 362 N.C. 491, 493 (2008)). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *State v. Hunt,* 365 N.C. 432, 436 (2012) (quoting *State v. Abshire,* 363 N.C. 322, 327–328 (2009)). All evidence is viewed "in the light most favorable to the State and the State receives the benefit of every reasonable inference supported by that evidence." *Id.*

i.  Second-Degree Exploitation of a Minor

A juvenile commits the offense of second-degree sexual exploitation of a minor if he or she "[r]ecords, photographs, films, develops, or duplicates material that contains a visual representation of a minor engaged in sexual activity; or . . . [d]istributes, transports, exhibits, receives, sells, purchases, exchanges, or solicits material that contains a visual representation of a minor engaged in sexual activity." N.C.G.S. § 14-190.17(a) (2020). A "common thread" in the conduct covered by this criminal offense is that "the defendant [took] an active role in the production or

distribution of child pornography without directly facilitating the involvement of the child victim in the activities depicted in the material in question." *State v. Fletcher,* 370 N.C. 313, 321 (2017).

The petition alleged that Jeremy committed second-degree sexual exploitation of a minor by "record[ing] material containing a visual representation of a minor . . . engaged in sexual activity, . . . the defendant knowing the material's content." All of the testimony showed, and the State agrees, that Dan, not Jeremy, made the recording. Accordingly, the State relied on an acting in concert theory as to Jeremy's criminal culpability.

If "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof." *State v. Barnes,* 345 N.C. 184, 233 (1997) (alteration in original) (quoting *State v. Erlewine,* 328 N.C. 626, 637 (1991)). To act in concert means "to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose." *State v. Joyner,* 297 N.C. 349, 356 (1979). This may be shown by "circumstances accompanying the unlawful act and conduct of the defendant subsequent thereto." *State v. Westbrook,* 279 N.C. 18, 42 (1971). However, "[t]he mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him

guilty of the offense." *State v. Sanders,* 288 N.C. 285, 290 (1975).

Here, the State presented insufficient evidence of a common plan or purpose to record the incident. The video recording of the incident contains insufficient evidence of a common plan or scheme. The recording is only twenty-one seconds long and starts after commencement of the sexual contact between Jeremy and Zane. The video does not show any statements, actions, or conduct by Dan or Jeremy prior to this incident which could be considered evidence of a common plan or scheme. Rather, the evidence tended to showed that Jeremy did not wish to be recorded because he can be heard saying "you better not be recording this" and "[Dan] do not record this."

The State argues that Jeremy approved of the recording because he gave a "thumbs up" at the end of the video. Given the poor quality and length of the video, it is unclear whether he was giving a thumbs up or simply forming his hand into a fist. Even if Jeremy did give a thumbs up in the video, acting in concert requires more than mere approval. *See State v. Birchfield,* 235 N.C. 410, 413 (1952) ("The mere presence of a person at the scene of a crime at the time of its commission does not make him a principal in the second degree . . . even though he may silently approve of the crime . . . .")

The State failed to present any additional evidence showing a common plan or scheme. The State introduced statements from Dan, who denied anyone asking him to make the recording. The State presented no evidence that Jeremy asked or desired Dan to record the incident. Rather, the evidence showed that Jeremy did not wish to

be recorded and that Dan's decision to record the incident was of his own volition. Therefore, we agree with the Court of Appeals that the trial court erred by denying Jeremy's motion to dismiss the charge of second-degree sexual exploitation of a minor and Jeremy's adjudication for this petition must be vacated.

ii.     First-Degree Forcible Sexual Offense

A juvenile commits a first-degree forcible sexual offense if they "engage[ ] in a sexual act with another person by force and against the will of the other person, and . . . [t]he person commits the offense aided and abetted by one or more other persons." N.C.G.S. § 14-27.26(a) (2019). A sexual act is defined as "[c]unnilingus, fellatio, analingus, or anal intercourse." N.C.G.S. § 14-27.20(4) (2020). Our statutes further explain that "[p]enetration, however slight, is vaginal intercourse or anal intercourse." N.C.G.S. § 14-27.36 (2019). Jeremy's petition alleged that he unlawfully, willfully, and feloniously engaged in anal intercourse with Zane by force and against his will.

The State may elicit evidence of penetration from the victim, but when a victim fails to testify that penetration occurred, the State must present additional corroborative evidence of actual penetration. *See State v. Hicks,* 319 N.C. 84, 90 (1987); *State v. Robinson,* 310 N.C. 530, 534 (1984). In *Hicks,* this Court reversed a conviction for first-degree sexual offense because of "the ambiguity of [the victim's] testimony as to anal intercourse" and the lack of corroborative evidence, such as physiological or demonstrative evidence, that anal intercourse actually occurred.

*Hicks,* 319 N.C. at 90. Similarly, this Court reversed a conviction for first-degree rape in the case of *Robinson* because the victim never testified as to sexual intercourse and the only corroborative evidence was testimony from an examining doctor that a male sex organ "could" have caused the victim's injuries and an ambiguous statement by the defendant as to his culpability. *Robinson,* 310 N.C. at 534.

Here, the victim did not give ambiguous testimony as to anal penetration and explicitly denied that any anal penetration occurred, testifying that he only "felt [Jeremy's] privates on [his] butt." When asked whether he felt Jeremy's privates "go into [his] butt, however slightly," he responded in the negative, stating "[n]ot that I know of." This matter is distinguishable from *Hicks* because here the victim's testimony was unambiguous and he directly denied any penetration.

Despite Zane's testimony, the State argues that the video recording provided sufficient evidence of anal penetration. The video does show that Zane was held by Jeremy by force and against his will and that Jeremy was thrusting himself towards Zane while behind him with his pants pulled down, but it does not show anal penetration or any other sexual act as defined in N.C.G.S. § 14-27.20(4).

The State further argues that Jeremy's statements, coupled with Dan and Carl's statements, provided sufficient corroborative evidence to support the trial court's denial of Jeremy's motion to dismiss. Dan told law enforcement that Jeremy and Zane were "doing it," and Carl indicated that it seemed like they were having sex. Jeremy denied that any penetration occurred when he spoke with law

enforcement. We find these statements analogous to the statements in *Robinson* by the examining doctor that penetration could have occurred—statements that were insufficient as a matter of law to submit the charge of first-degree rape to the jury given the lack of testimony as to penetration by the victim. Although the State argues that sufficient evidence was presented to the trial court as to actual anal penetration, the State recognized the weakness of its evidence when Jeremy moved to dismiss, stating that "the State would concede that the—as to the first degree forcible sex offense, that there was not evidence of penetration." We agree and hold that the State failed to present sufficient evidence of a sexual act as defined in N.C.G.S. § 14-27.20(4). Therefore, we agree with the Court of Appeals that the trial court erred by denying Jeremy's motion to dismiss the charge of first-degree forcible sexual offense and Jeremy's adjudication must be vacated.

iii.      Attempted Larceny

The trial court found that there was a sufficient factual basis to support Jeremy's admission to attempted larceny. For the reasons articulated below, we agree and reverse the holding of the Court of Appeals as to this issue.

A trial court may accept an admission only after determining that there is a factual basis for the admission, and this determination can be based on a statement of facts by the prosecutor or statements by the juvenile's attorney. N.C.G.S. § 7B-2407(c) (2019). This factual basis must contain "some substantive material independent of the plea itself . . . which tends to show that [the juvenile] is, in fact,

guilty." *State v. Sinclair,* 301 N.C. 193, 199 (1980). This evidence must be sufficient

for an independent judicial determination of the juvenile's actual guilt. *See State v.

Agnew,* 361 N.C. 333, 337 (2007) ("In sum, the transcript, defense counsel's

stipulation, and the indictment taken together did not contain enough information

for an independent judicial determination of defendant's actual guilt in the instant

case.").

The elements needed to support an admission of attempted larceny are: "(1)

[a]n intent to take and carry away the property of another; (2) without the owner's

consent; (3) with the intent to deprive the owner of his or her property permanently;

(4) an overt act done for the purpose of completing the larceny, going beyond mere

preparation; and (5) falling short of the completed offense." *State v. Weaver,* 123 N.C.

App. 276, 287 (1996). Acting in concert can be proven when a juvenile is "present at

the scene of the crime" and "act[s] together with another who does the acts necessary

to constitute the crime pursuant to a common plan or purpose to commit the crime."

*Joyner,* 297 N.C. at 357.

Jeremy entered into and signed a transcript of admission indicating that he

was admitting to the charge of attempted larceny and that he did in fact commit the

acts charged in the petition. The State gave the following factual basis for the

attempted larceny:

> [The victim] reported that his bicycle had been stolen.
> Police came, and witnesses said that two black males,
> giving descriptions, had taken the bike by using bolt

cutters to cut the chain that secured it.

> And shortly after that, the—the responding officer saw three folks somewhat matching that description riding two bicycles. So, two were on one bicycle, one was on the other bicycle, kind of off on his own. That one off on his own on a bicycle turned out to be [Jeremy]. He's the only one who stopped and was willing to talk with the officer.

> He said that he had nothing to do with the theft of the bicycle, gave the name of the person who did, and he did admit to having the bolt cutters in his back pack.

Defense counsel for Jeremy indicated that Jeremy let his friend borrow his bookbag, who placed the bolt cutters in the bookbag before "they went off to do their deed." He further indicated that "[Jeremy] was with them, shouldn't have been, had some knowledge of what was happening or should have knowledge of what was happening, and has accepted responsibility for that."

The factual basis from the State and the additional arguments from Jeremy's defense counsel constitute sufficient evidence upon which the trial court could rely on to accept his admission of guilt. The State's factual basis showed that two young males stole a bicycle using bolt cutters and Jeremy was found with two black males who matched the description. When Jeremy was found with these two males he had bolt cutters in his bookbag. Jeremy's defense counsel indicated that Jeremy let one of the other males place the bolt cutters in his bookbag before "they went off to do their deed" and that Jeremy was with the other males when the crime occurred. We find that his presence at the crime scene coupled with his possession of tools used to

commit the crime was sufficient evidence for the trial court to accept his transcript of admission. Therefore, the trial court did not err by accepting Jeremy's admission to attempted larceny.

Jeremy was sentenced to a Level 3 disposition based on his adjudication for committing first-degree forcible sexual offense, a B1 felony. He had zero prior delinquency points, so a Level 3 disposition was only available if he was adjudicated delinquent based on a Class A through E felony offense. N.C.G.S. § 7B-2508(a), (f) (2019). Having affirmed the Court of Appeals holding vacating his adjudication for a Class B1 felony and adjudication for a Class E felony, and given our decision that the trial court did not err by accepting his admission for misdemeanor attempted larceny, we must also vacate his Level 3 disposition order.

Although we hold that the trial court did not err by accepting Jeremy's attempted-larceny admission, we cannot remand this matter to the trial court for a new disposition hearing because the trial court's jurisdiction terminated once Jeremy turned eighteen years old.[4] Generally, our juvenile courts have jurisdiction over juveniles that commit offenses before turning sixteen until jurisdiction is terminated by the court or the juvenile reaches the age of eighteen. N.C.G.S. § 7B-1601(b) (2019).

---

[4] While his appeal was pending before this Court, Jeremy turned eighteen years old and filed a motion to dismiss this appeal. We ultimately denied that motion and addressed the merits of this case because an adjudication for a B1 felony can be used as an aggravating factor in adult sentencing proceedings. N.C.G.S. § 15A-1340.16(d)(18a).

Here, Jeremy turned eighteen on 3 December 2019 while this matter was pending before this Court. On that date, the trial court's jurisdiction to enter a disposition order for Jeremy's misdemeanor attempted larceny terminated.[5]

## Conclusion

For the reasons stated above, we agree with the Court of Appeals that the juvenile's adjudications for first-degree forcible sexual offense and second-degree sexual exploitation of a minor and his Level 3 disposition must be vacated. We reverse the Court of Appeal's holding that there was insufficient evidence to support his attempted-larceny admission and hold that the trial court lacks jurisdiction to enter a new dispositional order as to that offense.

AFFIRMED IN PART; REVERSED IN PART.

---

[5] The dissent argues that there was sufficient evidence to support an adjudication for the lesser included offense of attempted first-degree forcible sexual offense and the matter should be remanded for entry of an amended adjudication order. We agree that there was sufficient evidence to support an adjudication for attempted first-degree forcible sexual offense, but when Jeremy turned eighteen the trial court's jurisdiction to enter an adjudication order also terminated. For these reasons, we decline to address the sufficiency of the State's evidence as to attempted first-degree forcible sexual offense.

Justice NEWBY concurring in part and dissenting in part.

I agree with the majority that the trial court appropriately accepted respondent's admission of attempted larceny. I also agree that the evidence was insufficient to support the adjudication of delinquency for second-degree sexual exploitation of a minor and for first-degree forcible sexual offense. But I dissent in part because the evidence was sufficient to support the lesser included offense of attempted first-degree forcible sexual offense, which is a Class B2 felony. *See* N.C.G.S. § 14-27.26 (2019); N.C.G.S. § 14-2.5 (2019). When the evidence does not support the offense adjudicated at the trial court, but does support a lesser included offense, remand for an adjudication on that lesser included offense is appropriate. N.C.G.S. § 15A-1447(c) (2019); *State v. Stokes*, 367 N.C. 474, 476–78, 756 S.E.2d 32, 34–35 (2014). This Court thus should remand for entry of an amended adjudication against respondent for attempted first-degree forcible sexual offense.