STATE v. TUTEN.

(Filed September 16, 1902.)

ARGUMENTS OF COUNSEL—*New Trial—Improper Remarks of Solicitor—Trial.*

The improper remarks of the solicitor in this case constitute ground for a new trial.

INDICTMENT against Stephen Tuten, heard by Judge George A. Jones and a jury, at May Term, 1902, of the Superior Court of BEAUFORT County.

This is a criminal action wherein the defendant has been convicted of selling spirituous liquors by the small measure

without license.    Upon the trial the defendant testified as a witness in his own behalf.    The State offered one John W. Warren to prove the sale.    This was the only evidence offered by the State.    Upon cross-examination of the defendant, the Solicitor asked him whether he had not been charged with the murder of John Cayton.    The defendant replied that he had been charged with the said murder, and that he had been committed to jail upon the finding of the Coroner's jury; that he had had no opportunity to appear before the inquest, and was not present when it was held; that the grand jury of the county had investigated the charge of murder and had ignored the bill against him.    The said Cayton had been murdered in the county of Beaufort, being shot in his house at night, about the 1st of February, 1902.

When the Solicitor addressed the jury, among other things he said: "This moonshine business must be broken up; Cayton's murder was caused by the moonshine business, and you should put a stop to it."    There was no evidence offered as to the murder of Cayton, except the testimony upon the cross-examination of defendant, above stated, and there was no evidence offered to show by whom Cayton was murdered, or for what cause he was murdered.    When the Solicitor made to the jury the remarks above quoted, the counsel for the defendant arose and asked the Court to stop the Solicitor from commenting upon the murder of Cayton and the cause for it; that the remarks were improper and tended to prejudice a fair trial of the defendant.    As soon as this objection was made by counsel for defendant, the Solicitor partially turned from the jury and said: "I do not charge Tuten with the murder of Cayton, or say that he was connected with it.    I take it all back; but I do say that his murder was caused by this moonshine business, and it should be broken up."    Defendant excepted.    When the Solicitor made this statement the Court did not interpose or make any correction or comment, or caution the jury.

The defendant was convicted.

From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Charles F. Warren,* for defendant.

DOUGLAS, J. (after stating the facts). The above is the only exception appearing in the record. In our view of the law, it must be sustained upon the principle laid down by this Court in *Perry v. Railroad,* 128 N. C., 471. In this case, as in that, the Solicitor stated a fact which there was no evidence tending to prove, and which in its very nature would tend to prejudice the defendant. It is true the Solicitor disclaimed any intention of charging the defendant with the murder of Cayton, but he immediately repeated the injurious assertion that "Cayton's murder was caused by this moonshine business, and it should be broken up." It is well known that the term "moonshine business" refers to the unlawful manufacture or sale of spirituous liquors. Like the common law offence of "owling" applied to the unlawful exportation of wool, it derives its name from the fact that it is carried on principally at night, or at least in secret.

This was the offence for which the defendant was being tried, and the jury might have believed that the appeal to them by the Solicitor to break up the business, was a plea for the conviction of the defendant, who stood charged with a crime that had led to one murder and might lead to others.

The motive of the Solicitor in making the statement is not as important as its probable effect upon the jury. The best of motives sometimes lead to the most dangerous results; and if in the calmer deliberation of an appellate tribunal we see that the defendant may have been prejudiced by the inadvertent act of Court or counsel, and thus deprived of that im-

partial trial that is guaranteed to him by the law of the land, it is our duty to grant him a new trial.

The State lays great stress upon those cases which say that much must be left to the discretion of the Judge below as to when and how he will correct the error, either by stopping the counsel or cautioning the jury; but, in the case at bar, the Court did neither.

It is urged that the jury were too intelligent to be prejudiced by any such remark. This may be true, and yet it does not affect the spirit of the law which seeks by well-established rules to prevent the possibility of prejudice. An opposite course would do away with the entire law of evidence and permit the introduction of all testimony of every kind and description, competent or incompetent, relevant or irrelevant, that either side may see fit to offer. In all such cases, the intelligence of the jury must be guided by the wisdom and experience of the law.

In conclusion, we may repeat what was said in *Perry v. Railroad, supra:* "If that were all, we would hesitate to interfere; but counsel went far beyond any testimony in the case, and, over the objection of the defendant, related facts within his personal knowledge, not of common information, and which were not in evidence. These facts were essentially damaging in their nature, and coming from so high a source, were capable of producing the most dangerous prejudice. That the counsel intended no impropriety, which we cheerfully admit, does not alter the case. The fact remains that such statements, coming from one of his high character and exalted position in his profession, became only the more dangerous when addressed to jurors whose confidence he justly possessed. Such statements were not in evidence and were not properly admissible in the argument of counsel. For the failure of his Honor to interfere, at the request of opposing counsel, a new trial must be ordered."

New Trial.