STATE OF NORTH CAROLINA v. EDWARD CARL SCOTT

No. 19A85

(Filed 13 August 1985)

**Automobiles and Other Vehicles § 128— DUI—prosecutor's argument on public sentiment—improper**

In a prosecution for involuntary manslaughter arising from a fatal traffic accident where defendant was also charged with driving under the influence, the trial court erred by not sustaining defendant's objection to the prosecutor's closing argument that "there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway." The argument was improper because it went outside the record and appealed to the jury to convict defendant because impaired drivers had caused other accidents.

APPEAL by the defendant under N.C.G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, 71 N.C. App. 570, 322 S.E. 2d 613 (1984) finding no error in judgments entered by *Judge Wiley F. Bowen* on August 4, 1983, in Superior Court, CUMBERLAND County. Heard in the Supreme Court on June 11, 1985.

*Lacy H. Thornburg, Attorney General, by Grayson G. Kelley, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The sole question presented by this appeal is whether certain statements by the prosecutor in his closing argument to the jury

resulted in reversible error. We conclude that they did and that the defendant must receive a new trial.

All of the charges for which the defendant was convicted arose from one fatal traffic accident. The defendant was indicted, pled not guilty, and was convicted by a jury for the felony of involuntary manslaughter and the misdemeanors of driving under the influence of alcohol and driving too fast for existing conditions. The trial court entered judgments and sentences on these counts which were appealed to the Court of Appeals and now to this Court. The defendant pled guilty to other counts arising from the same accident and did not appeal his conviction for those.

The evidence taken in the light most favorable to the State tended to show that the defendant was driving a 1972 Cadillac at approximately 100 miles per hour on U.S. Highway 401 south of Fayetteville at 4:30 a.m. on February 6, 1983. Driving conditions were poor because the highway was wet from rain and snow. The defendant's car had rounded a curve and was entirely or partially on the wrong side of the road when it struck a vehicle traveling in the opposite direction and occupied by Edwin Newton, Jr., who died in the wreck.

After the wreck the defendant was questioned at the hospital where he had been taken. He admitted drinking two beers during the evening. A witness testified that he had seen the defendant at a disco club with a beer in his hand during the evening but had not seen him drink any of the beer. The witness stated that the defendant "didn't seem drunk, but seemed like he was high." At the hospital, the defendant refused to submit to a blood test saying that he did not want to be stuck with any needles. He was injured and undergoing treatment at the time this statement was made. The test had been requested because an officer at the scene of the wreck had observed beer cans in the defendant's car and detected an odor of alcohol.

Witnesses called by the defendant gave testimony tending to show that he did not drink any alcoholic beverages and that his driving was normal shortly before the wreck. The defendant's evidence directly tended to show that his speed was not excessive and his driving was not reckless at the time of the wreck. Further, it tended to show that he was driving to the right of the center line of the highway.

The issue before us was properly presented to the Court of Appeals but not addressed in the opinion of the majority there. The defendant contended there, as he does before this Court, that the trial court committed reversible error by overruling his objection to the prosecutor's argument to the jury. The part of the prosecutor's argument objected to by the defendant and properly brought forward and presented for appellate review was as follows:

> Now, we often hear, we often read in the paper or hear on television or anything else, something that happens, there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway. And, you know, you read these things and you hear these things and you think to yourself, "My God, they ought to do something about that." . . .
>
>                   . . . .
>
> Well, ladies and gentlemen, the buck stops here. You twelve judges in Cumberland County have become the "they".

We conclude that the defendant's assignment and contention concerning this argument by the prosecutor have merit.

As we have noted the dual roles of a prosecutor as an impartial representative of the people, on the one hand, and as a zealous advocate for conviction, on the other, involves a delicate balance. *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975). Although the misstep by the prosecutor seems to have been inadvertent, the trial court's failure to correct it upon timely objection requires that the convictions fall in the present case. The motive of the prosecutor in such instances is not as important as the probable effect upon the jury.

The impropriety of the prosecutor's argument in the present case does not arise from his having told the jury that "the buck stops here" or that the jurors had become "judges" in the case or had "become the 'they'." These statements correctly informed the jury that for purposes of the defendant's trial, the jury had become the representatives of the community. "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community." *Smith v. Texas,* 311 U.S. 128, 130 (1940). Permitting the

jury to act as the voice and conscience of the community is required because the very reason for the jury system is to temper the harshness of the law with the "commonsense judgment of the community." *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). In a criminal case such as this, therefore, "the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." *Williams v. Florida*, 399 U.S. 78, 100 (1970). The prosecutor's statements along these lines were not error.

The prosecutor fell into improper argument, however, when he emphasized to the jury that "there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway." This argument was improper because it went outside the record and appealed to the jury to convict the defendant because impaired drivers had caused other accidents. *See, e.g., State v. Phifer*, 197 N.C. 729, 150 S.E. 353 (1929); *State v. Tuten*, 131 N.C. 701, 42 S.E. 443 (1902).

Further, such statements could only be construed as telling the jury that the citizens of the community sought and demanded conviction and punishment of the defendant. In this regard we find a recent decision of the Court of Criminal Appeals of Texas instructive. Although noting that it was proper to tell a jury that they were the voice and conscience of the community, that Court concluded that it was improper to demand punishment because of the citizen's desires. *Prado v. State*, 626 S.W. 2d 775, 776 (Tex. Crim. 1982). It pointed out that by such arguments, "[t]he State was asking the jury to lend an ear to the community rather than a voice." *Id.* We agree.

Statements about demands by the public for convictions and punishments for driving impaired are properly made to the legislature which has the responsibility for enacting laws which directly reflect the will of the public. When made to a jury in a court of law, however, such statements amount to an invitation to ignore the evidence and to hark to a pack already hot on the trail and in full cry. Therefore, such statements about the sentiments of the citizens of the community are improper.

The State does not contend that the improper statement of the prosecutor was an induced response to any argument by counsel for the defendant. Indeed, a review of the arguments of the prosecutor and counsel for the defendant, which are correctly included in their entirety in the record on appeal, clearly shows that the improper statement was not induced.

The State recognizes that the defendant objected to the improper statement by the prosecutor. However, it points out that the defendant must still show that the trial court's error in failing to sustain the objection or otherwise correct the impropriety prejudiced his right to a fair trial. *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977). Although we agree with this statement of the law, it is of little assistance to the State since the defendant made the necessary showing.

The State contends that the improper argument to the jury in the present case was harmless because the prosecutor told the jury "nothing they had not already heard a thousand times." The State argues that the defendant's trial came at a time when driving under the influence was being hotly debated in the legislature and elsewhere throughout North Carolina and that

> the media had bombarded the public with articles and broadcasts on this subject for months prior to this trial. Every issue in this trial involved the topic of drunk driving. The jurors in this case were therefore totally saturated with the issue of drunk driving long before the prosecutor added his brief remarks.

As this Court has pointed out in response to a similar but not identical argument, however:

> This may be true, and yet it does not affect the spirit of the law which seeks by well-established rules to prevent the possibility of prejudice. An opposite course would do away with the entire law of evidence and permit the introduction of all testimony of every kind and description competent or incompetent, relevant or irrelevant, that either side may see fit to offer.

*State v. Tuten*, 131 N.C. at 704, 42 S.E. at 443. The present case was hotly contested at trial. The defendant offered evidence through his own testimony and that of others tending to rebut

almost every element of the crimes for which he was tried. We think it entirely possible that the improper argument of the prosecutor made a difference in the result reached by the jury.

It is largely in the discretion of the trial court to decide when and how it will correct the potential effects of an improper argument by counsel, either by stopping the argument or by proper instructions to the jury. *See State v. Tuten*, 131 N.C. at 704, 42 S.E. at 443. Perhaps the trial court could have prevented reversible error in this case by one or the other of these methods. *Cf. State v. Best*, 265 N.C. 477, 479, 144 S.E. 2d 416, 417 (1965) (the prosecutor's improper argument to "take these drunken drivers off of the streets so we can get home tonight" was cured by the trial court's prompt action in sustaining the defendant's objection and instructing the jury not to consider the argument). Here, however, the trial court overruled the defendant's objection to the prosecutor's improper argument.

The improper part of the prosecutor's argument was brief, and he did not return to or dwell upon the matters therein. Therefore, it seems clear that the prosecutor had no improper motive. Nevertheless, it has long been the view of this Court that:

> The motive of the [prosecutor] in making the statement is not as important as its probable effect upon the jury. The best of motives sometimes lead to the most dangerous results, and if in the calmer deliberation of an appellate tribunal we see that the defendant may have been prejudiced by the inadvertent act of court or counsel, and thus deprived of that impartial trial that is guaranteed to him by the law of the land, it is our duty to grant him a new trial.

*State v. Tuten*, 131 N.C. at 703-04, 42 S.E. at 443. Here we perform that duty. The decision of the Court of Appeals is reversed, and this case is remanded to the Court of Appeals for its further remand to the Superior Court, Cumberland County, with instructions to grant the defendant a new trial.

Reversed.