STATE OF NORTH CAROLINA v. JEFFREY CLIFTON CAMPBELL

No. COA98-654

(Filed 15 June 1999)

## 1. Indictment and Information— date of offense—correction

The trial court did not err in a prosecution for a first-degree burglary and first-degree statutory rape by granting the prosecution's motion to correct the date of the offenses. Time is not an essential element of these crimes, defendant was obviously aware that the date on the indictment was incorrect, defendant was neither misled nor surprised as to the nature of the charges, and there was no evidence of an alibi or any other defense wherein time would be material.

## 2. Confessions and Incriminating Statements— defendant not in custody—Miranda warnings not required

A defendant in a burglary and statutory rape prosecution was not in custody and Miranda warnings were not required where defendant took affirmative steps to contact the police after they contacted him and made an appointment to meet at the police station at a time convenient to him; defendant arrived at the station under his own volition and agreed to speak with the officers; at no time was he searched, handcuffed, or restricted in his movement; officers told him he was free to leave before questioning began; he was told on at least four occasions during questioning that he was free to leave and asked whether he understood; he replied in the affirmative each time; these exchanges occurred before defendant spoke with the officers, before he incriminated himself, and before he wrote the confes-

sion; and defendant left the station alone at the end of the interview. Finding that defendant was not in custody is independent of finding that he voluntarily gave his statement.

**3. Confessions and Incriminating Statements— confession— voluntary**

A defendant's confession to first-degree burglary and first-degree rape was voluntary where defendant voluntarily went to the police station; he was neither deceived nor held incommunicado, nor were there oral or physical threats or shows of violence against him; officers told defendant that it would "be best if he cooperated," but no promises were made; while one detective was larger than defendant, that factor does not indicate that defendant would be threatened; the choice of a detective of the same sex and race as defendant to interrogate him may have been "manipulative," but defendant did not show that this had any bearing on inculcating hope or fear in defendant; and there was no indication that defendant was under the influence of impairing substances or that his mental capacity was debilitated.

**4. Criminal Law— prosecutor's argument—defendant as "sexual predator"**

There was no error in a prosecution for first-degree burglary and first-degree statutory rape where the prosecutor in closing arguments labeled defendant a "sexual predator." The use of the term was slight and was confined to one paragraph of the argument; given the abundance of evidence indicating guilt, including defendant's confession, there is no reasonable possibility that this characterization of defendant may have affected the verdict.

**5. Evidence— prior crime or act—prior burglaries—rape victim's demeanor—admissible**

The trial court did not err in a prosecution for first-degree burglary and first-degree statutory rape by allowing testimony regarding previous burglaries to the home and the victim's demeanor after the rape. The testimony of the victim's mother about her suspicion that defendant was involved in recent burglaries at her home, and a detective's repetition of the statements, were admissible to show opportunity, preparation, knowledge, identity, and absence of mistake, entrapment, or accident. The statements regarding the victim's demeanor after the rape are directly relevant as to whether the rape occurred.

## 6. Burglary and Unlawful Breaking or Entering— misdemeanor breaking or entering as lesser included offense— instruction refused

The trial court did not err in a prosecution for first-degree burglary by refusing to instruct on the lesser include offense of misdemeanor breaking or entering where the State clearly established each of the elements of first-degree burglary and there was no evidence showing the commission of a lesser included offense.

## 7. Discovery— prosecution's failure to disclose exculpatory evidence—no prejudice

There was no prejudicial error in a prosecution for first-degree burglary and first-degree rape from the State's failure to disclose hair samples taken from the crime scene and photographs of the victim's bathroom window. The district attorney did not have DNA analysis performed on the hair samples, so that their inculpatory or exculpatory nature is unknown and the information that the bathroom window was possibly the point of entry, which contradicts defendant's confession, was in evidence through other testimony. Moreover, defendant's confession and the overwhelming evidence against him vastly diminish the effect of the photographs and hair samples.

## 8. Sentencing— structured—presumptive range—evidence of mitigating factors—no evidence of aggravating factors

The trial court did not abuse its discretion by sentencing defendant within the Structured Sentencing presumptive range where there was evidence of several mitigating factors, but no aggravating factors. A trial court is not required to justify a decision to sentence a defendant within the presumptive range by making findings of aggravation and mitigation.

Appeal by defendant from judgment entered 12 December 1997 by Judge J. Marlene Hyatt in Buncombe County Superior Court. Heard in the Court of Appeals 24 February 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Amy R. Gillespie, for the State.*

*William H. Leslie for defendant-appellant.*

HUNTER, Judge.

Defendant was convicted of first-degree burglary and first-degree statutory rape of a fifteen-year-old female ("victim").

The State's evidence at trial indicated that late on the night of 27 May 1997, the victim awoke to find a male assailant in her bed attempting to strangle her. The victim begged for the assailant to let her go, whereupon the assailant covered her mouth, instructed her not to talk, and raped her. He then told the victim that he would kill her and her mother if she told her mother about the incident. The assailant left the room, but returned soon afterwards, looking for his belt. The assailant failed to retrieve his belt and then left the victim's bedroom. Afterwards, the victim went to her mother's bedroom and awakened her.

The victim's mother, Jane Hurrell ("Hurrell"), took the victim to a friend's house and then went to the police station and reported the crime. The next morning, Asheville Police Detective Dawn Dowdle and other officers went to the Hurrell home, where Hurrell showed them the belt she had found in the victim's bedroom. Detective Dowdle learned that Hurrell suspected defendant of the crimes.

Detective Dowdle telephoned defendant's home several times and talked to his mother. She told his mother that she wanted to talk with defendant about a case she was investigating. Detective Dowdle left a message for defendant to call her back. Defendant returned the call, and he and Detective Dowdle scheduled an appointment after she advised him about the case she was investigating.

On 2 June 1997, defendant came to the Asheville Police Station via his own transportation. He arrived early and was escorted to the interview room. Defendant was joined by Detective Dowdle and Detective Forrest Weaver, who were both in plain clothes. When they entered the room, Detective Weaver told defendant that he was free to go, he was not under arrest, and that he could leave at any time. Detective Dowdle explained why she had asked defendant to be interviewed. At some point during the interview, Detective Weaver again told defendant that he was free to go, he was not under arrest, and that he could leave at any time.

During the course of defendant's interview with Detectives Dowdle and Weaver, he claimed to have had a preexisting consensual, sexual relationship with the fifteen-year-old victim. In response, Detective Dowdle told him, "I think you're lying." At that point,

Detective Weaver asked Detective Dowdle to step out of the room. At trial, Detective Weaver testified that he believed defendant wished to speak to him alone.

After Detective Dowdle left the room, Detective Weaver told defendant again that he was not under arrest and that he was free to go. He asked defendant if he could understand this. Defendant responded in the affirmative. Defendant then began to make a statement concerning the rape of the victim. Detective Weaver stopped him, and asked, "Now, you understand that you are not under arrest, you're free to go?" Defendant again responded in the affirmative. The detective then said, "Go ahead with your statement." Defendant continued to make a verbal confession of the crimes occurring the night of 27 May 1997. Detective Weaver once again asked defendant if he understood that he was not under arrest and that he was free to go. Defendant stated that he understood, and then proceeded to write a statement confessing to the crimes. Detective Weaver did not make defendant any promises about what would happen if he were to confess.

After defendant finished his statement, he left the police station. The entire meeting had lasted approximately thirty minutes. Warrants for defendant's arrest were issued the next day. Defendant was subsequently tried and convicted at the 8 December 1997 session of criminal superior court in Buncombe County. He was sentenced to 103 to 133 months on the charges of first-degree burglary and 336 to 413 months on the charge of first-degree statutory rape, said sentences to run consecutively.

**[1]** Defendant first assigns error to the trial court's granting the prosecution's motion to correct the date of the offense listed on the indictments from 2 June 1997 to 27 May 1997.

N.C. Gen. Stat. § 15A-923(e) (1997) provides that "[a] bill of indictment may not be amended;" however, "amendment" in this context has been interpreted to mean "any change in the indictment which would substantially alter the charge set forth in the indictment." *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984). Where time is not an essential element of the crime, an amendment in the indictment relating to the date of the offense is permissible since the amendment would not substantially alter the charge set forth in the indictment. *State v. Brinson*, 337 N.C. 764, 448 S.E.2d 822 (1994) (*citing Price*, 310 N.C. at 598-99, 313 S.E.2d at 559). A change in an indictment does not constitute an amendment where the vari-

ance was inadvertant and defendant was neither misled nor surprised as to the nature of the charges. *State v. Bailey*, 97 N.C. App. 472, 389 S.E.2d 131 (1990). In the present case, time is not an essential element of the crime. Defendant was obviously aware that the 2 June 1997 date on the indictment was incorrect for defendant made the appointment to meet with the police, and met with them, on 2 June 1997. Defendant was neither misled nor surprised as to the nature of the charges. While a variance as to time does become material and of essence when it deprives a defendant of an opportunity to adequately present his defense, *see Price; State v. Kamtsiklis*, 94 N.C. App. 250, 380 S.E.2d 400, *disc. review denied*, 325 N.C. 711, 388 S.E.2d 466 (1989), the record in the present case indicates that there was no evidence of an alibi defense or any other defense wherein time would be material. We conclude that the change of date in this indictment was not an amendment proscribed by N.C. Gen. Stat. § 15A-923(e). Accordingly, we overrule this assignment of error.

**[2]** Secondly, defendant contends the trial court erred in admitting his confession on the basis that it was involuntary and the unlawful product of a custodial interrogation, violating *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966).

The requirement that a suspect be given *Miranda* warnings is triggered when the suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 44, 16 L. Ed. 2d at 706. The United States Supreme Court has recognized that *Miranda* warnings are not required simply because the questioning takes place in the police station or other "coercive environment" or because the questioned person is one whom the police suspect of criminal activity. *Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719 (1977) (per curiam). The United States Supreme Court has held that an appellate court should consider the totality of the circumstances surrounding the interrogation to determine if a suspect was "in custody;" however, "the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." *State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997) (*citing Stansbury v. California*, 511 U.S. 318, 128 L. Ed. 2d 293 (1994) (per curiam)). For *Miranda* purposes, the test for whether a person is in custody is whether a reasonable person in the suspect's position would feel free to leave or compelled to stay. *State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 883 (1994).

In the present case, defendant took affirmative steps to contact the police after they contacted him regarding the rape of the victim. He made an appointment to meet Detectives Dowdle and Weaver at the police station at a time convenient to him. He arrived at the station under his own volition and agreed to speak with the police officers. At no time was he searched, handcuffed, or restricted in his movement. Before the officers began questioning defendant, they told him he was free to leave. During the course of questioning, Detective Weaver told defendant that he was free to leave on at least four occasions, and asked him each time whether he understood what he meant. Defendant replied in the affirmative each time. These exchanges occurred before defendant spoke with the officers, before he incriminated himself verbally, and just before he wrote the confession. At the end of the interview, defendant left the station alone.

Defendant relies on the holding in *State v. Harvey*, 78 N.C. App. 235, 336 S.E.2d 857 (1985), where this Court held that a juvenile defendant was in custody when he was questioned by two officers in a closed office; however, the Court also considered the additional factors that defendant was taken far from his home by police officers, subjected to lengthy questioning, was never expressly told that he was not under arrest or that he was free to leave and could end the questioning at anytime, and was seventeen years old with an IQ of 78. *Id.* The additional factors which the Court relied on in *Harvey* are not present in the case *sub judice*. Defendant volunteered to be interviewed, traveled to the police station of his own volition, and was informed on various occasions that he was free to go. No evidence indicated that defendant misunderstood or was unable to understand these statements. Based on the totality of the circumstances, we conclude that a reasonable person in defendant's position would have felt free to leave the police station as explained in *State v. Rose.* Therefore, defendant was not "in custody" and *Miranda* warnings by the police officers were not required; however, this factor is independent of a finding that defendant voluntarily gave his statement.

[3] The Fourteenth Amendment requires that a statement be voluntary in order to be admissible, whether or not *Miranda* warnings are required or given . . . and the State has the burden of proving, by a preponderance of the evidence and examined in context with the totality of the circumstances, that the statement was voluntary. *State v. Corbett*, 339 N.C. 313, 451 S.E.2d 252 (1994). Incriminating statements obtained by the influence of hope or fear are involuntary and thus inadmissible. *See State v. Pruitt*, 286 N.C. 442, 212 S.E.2d 92

(1975); *State v. Roberts*, 12 N.C. 259 (1827) (a confession cannot be received into evidence where defendant has been influenced by any threat or promise). Factors to be considered in a determination of voluntariness are

> whether defendant was in custody, whether he was deceived, whether his Miranda rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994) (citations omitted). In the present case, the evidence indicates that defendant voluntarily went to the police station and, as previously determined, was not in custody and therefore *Miranda* warnings were not required. He was neither deceived, held incommunicado, nor were there oral or physical threats or shows of violence made against him. While the officers did tell defendant that it would "be best if he cooperated," no promises were made to obtain his confession. While Detective Weaver's size was larger than that of defendant, this factor does not indicate that defendant would be threatened by Detective Weaver. Similarly, the choice of Detective Weaver to interrogate defendant because he was of the same sex and race as defendant may have been "manipulative," but defendant has not shown that this fact had any bearing on inculcating hope or fear to defendant. There was no indication that defendant was under the influence of impairing substances or that his mental capacity was debilitated. Therefore, based on the totality of the circumstances, we hold that defendant's confession was voluntary and the trial court did not commit error in admitting the confession into evidence.

[4] Defendant also assigns error to the trial court's overruling his objection to the prosecution labeling him a "sexual predator" in closing arguments. A new trial is required if there is a "reasonable possibility" that the inflammatory or prejudicial characterization may have affected the jury's verdict. *See State v. Gardner*, 316 N.C. 605, 342 S.E.2d 872 (1986).

Prejudice to the accused can occur when "improper suggestions" and "insinuations" by the prosecutor combine with a case that "may properly be characterized as weak." *Berger v. United States*, 295 U.S. 78, 89, 79 L. Ed. 1314, 1321 (1935). On the other hand, *Berger* held "[i]f

the case against [defendant] had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might [have been] reached." *Id.* The Court in *Berger* held: "[W]e have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *Id. Berger* has been adopted and expounded by the North Carolina Supreme Court. *See State v. Locklear,* 294 N.C. 210, 241 S.E.2d 65 (1978).

In the present case, the prosecutor's use of the term "sexual predator" was slight, and was confined to one paragraph of the closing argument. Given the abundance of evidence indicating defendant's guilt, most importantly, his confession, we find that there is no reasonable possibility that this lone instance of prejudicial characterization of defendant may have affected the jury's verdict. Accordingly, we find no error.

**[5]** Next, defendant contends that the trial court erred by allowing testimony by Hurrell and Detective Dowdle regarding previous burglaries to the Hurrell home, and testimony by Hurrell regarding her daughter's demeanor after the alleged rape. Defendant argues that admittance of this evidence was in error, as it was irrelevant and prejudicial.

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1992). "This rule is a general rule of inclusion of such evidence, subject to an exception if its only probative value is to show that defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. West,* 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991).

Hurrell testified that defendant visited her home on several occasions, and that he made the remark that he could possibly retrieve items that had been stolen from her home because he knew people who had "influence" in the area. Hurrell's testimony as to her suspi-

cion that defendant was involved in recent burglaries at her home, and Detective Dowdle's repetition of those statements were admissible to show proof of opportunity, preparation, knowledge, identity, and absence of mistake, entrapment, or accident. The testimony not only indicated that defendant was familiar with the victim's home, but that he was also familiar with the conduct and schedules of the victim and her mother. The conduct of which Hurrell suspected defendant was essentially the same as that for which he was charged: breaking and entering with the intent to commit a crime. Furthermore, the events were close in time. It is not clear exactly when the burglaries happened, but it is not disputed that the Hurrells had not lived in the house very long before the rape occurred. When prior incidents are offered for a proper purpose, the ultimate test of admissibility is whether they are sufficiently similar in nature and close in time to the instant charges. *West*, 103 N.C. App. 1, 404 S.E.2d 191. Detective Dowdle's repetition of Hurrell's statements was simply by way of explaining what Hurrell had told her the day after the crime, and the same 404(b) exception applies. Hurrell's statements regarding her daughter's demeanor after the rape are directly relevant as to whether the rape occurred, and as such, are admissible. Finally, even if any of the statements under defendant's fourth assignment of error were inadmissible, admitting them would have been harmless error. Defendant correctly notes that evidentiary errors are harmless unless defendant proves that absent the error, a different result would have been reached. In light of the other evidence in this case, including defendant's confession, no such finding is available here.

**[6]** Defendant next contends that the trial court erred by refusing to instruct the jury on the lesser included offense of misdemeanor breaking or entering.

It is not error for the judge to refuse to instruct on the lesser offense "when the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of a lesser included offense." *State v. Williams*, 314 N.C. 337, 351, 333 S.E.2d 708, 718 (1985). When there was evidence of defendant's intent to commit a felony, and there was no evidence that defendant broke and entered for some other reason, the trial court is correct to refuse to submit the misdemeanor breaking and entering charge to the jury. *State v. Patton*, 80 N.C. App. 302, 341 S.E.2d 744 (1986). In the present case, the State's evidence clearly satisfied each of the elements of first-degree burglary and first-degree

statutory rape as set out in N.C. Gen. Stat. § 14-51 (1993) and N.C. Gen. Stat. § 14-27.7A(a) (Supp. 1998), respectively. At the same time, there was no evidence showing the commission of a lesser included offense. Defendant argues that there was evidence of a lesser included offense because defendant's intent was simply to have consensual sex with the victim's mother. However, there was no testimony or other evidence that defendant and Hurrell had a positive relationship, let alone a consensual, sexual one. To the contrary, Hurrell testified that defendant made her uncomfortable. Because no substantial evidence of misdemeanor breaking or entering was presented, we find no error.

[7] In his sixth assignment of error, defendant contends that the prosecution failed to disclose potentially exculpatory evidence in violation of the mandate of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963). *Brady* stands for the proposition that a defendant's due process rights are violated when the prosecution fails to disclose evidence which may favor defendant, either by tending to show his innocence, or by tending to show mitigating factors that would ameliorate his punishment. *Id.* However, failure to give evidence to the defense violates defendant's right to due process only if the evidence was "material" to the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 87 L. Ed. 2d 481 (1985). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 87 L. Ed. 2d at 494.

In the present case, neither hair samples taken from the crime scene nor photographs of the victim's bathroom window were turned over to defendant by the prosecution. The district attorney did not have DNA analysis performed on the hair samples. Therefore, their inculpatory or exculpatory nature is unknown. The existence of the hairs, alone, does not directly bear on the question of innocence for assuming *arguendo* that the hair samples came from an individual other than defendant, so this fact merely provides some support for the theoretical possibility that another individual was in the victim's room and was the perpetrator of the crime. While it is the better practice for the prosecution to disclose potentially exculpatory evidence, we find that the hair samples in this case do not rise to the level of materiality defined in *United States v. Bagley*, especially in light of defendant's confession and overwhelming evidence establishing his guilt. Likewise, the photographs show that the perpetrator's point of entry possibly was the bathroom window, which contradicts defend-

ant's confession wherein he stated he entered the dwelling through the front door. While these photographs may have been exculpatory, the record reveals that this specific information regarding the bathroom window was in evidence through testimony and was therefore available for the jury's consideration. Based on the foregoing, we find that the photographs also do not meet the test of materiality, as defendant has not shown that their disclosure to him would result in a reasonable probability that the outcome of the trial would have been different. As with the hair samples, defendant's confession and overwhelming evidence against him vastly diminish the effect, if any, of these photographs. Therefore, we find no error.

[8] Finally, defendant contends that the court abused its discretion in sentencing defendant within the statutory presumptive range, given that evidence of several mitigating, but no aggravating, factors were presented to the court.

Defendant's sentences were in the presumptive range prescribed by the Structured Sentencing Act, which states, in part:

> The court shall make findings of the aggravating and mitigating factors present in the offense only if, in its discretion, it departs from the presumptive range of sentences . . . .

N.C. Gen. Stat. § 15A-1340.16(c) (1997). This Court has held that the plain language of the Structured Sentencing Act shows that the "legislature intended the trial court to take into account factors in aggravation and mitigation *only* when deviating from the presumptive range in sentencing." *State v. Caldwell*, 125 N.C. App. 161, 162, 479 S.E.2d 282, 283 (1997) (emphasis in original). Therefore, a trial court is not required to justify a decision to sentence a defendant within the presumptive range by making findings of aggravation and mitigation. Because the trial court in the case *sub judice* sentenced defendant within the presumptive range, we find no abuse of discretion.

No error.

Judges MARTIN and TIMMONS-GOODSON concur.