STATE OF NORTH CAROLINA
v.
BRIAN CRAIG SEXTON
No. COA07-1438
Court of Appeals of North Carolina
Filed October 7, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for Defendant.
STEPHENS, Judge.
On 7 August 2006, the Buncombe County Grand Jury indicted Defendant Brian Craig Sexton for statutory rape of a 14-year-old, sexual offense of a 14-year-old, and for the aggravating factor of taking advantage of a position of trust or confidence to commit each of the offenses. The case came on for trial at the 22 January 2007 Criminal Session of Buncombe County Superior Court. The jury returned guilty verdicts on both criminal charges and also found the existence of the aggravating factor associated with each charge. On 26 January 2007, Judge Powell found two mitigating factors in each case, but determined that the aggravating factor outweighed the mitigating factors for each charge. With seven prior record points, Defendant was a Prior Record Level III for sentencing purposes. The trial court sentenced Defendant in the aggravated range on each charge to concurrent sentences of 360 to 441 months imprisonment. From these judgments, Defendant appeals.

I. Facts
Around 5:00 a.m. on 13 June 2005, 14-year-old S.W. was sleeping on the couch in the living room of the double-wide trailer in which she lived with her mother, Elaine, and her sister, Felicia. Her mother was not at home and S.W.'s sister and boyfriend were asleep in the back bedroom. S.W. a woke to someone banging on the doors and windows of the trailer. When she opened the door, Defendant came to the door and said that he was having car trouble. S.W. let him into the home and got him a beer from the refrigerator. Defendant dozed off on the couch on which S.W. had been sleeping, and then awoke and watched television.
S.W. became uncomfortable with Defendant's presence and asked him to leave. He refused to leave and instead got himself another beer. S.W. became more vocal in asking Defendant to leave and threatened to call the police if he did not. When Defendant was walking in the kitchen toward the laundry room, S.W. pushed him and again told him to leave. Defendant hit her on the head several times and knocked her down in the laundry room. He grabbed her by the throat and mouth, choking her so she could not breathe.
Defendant started touching her sexually even though she told him not to. When Defendant put his hand up her shirt, she told him to leave and that she would not tell anyone. He said he would have to go to jail for twenty-five years. He pulled her pants down and put his tongue on her vagina. Defendant then penetrated her vagina with his penis. Bleeding and scared, S.W. did not fight back at this point, although she told Defendant, "No."
Defendant finally left after telling S.W. that if she told anyone what had happened, he would kill her and her family. S.W. tried to call her mother but was unable to reach her, so she awoke Felicia and told her she had been raped.
Felicia took S.W. to Mission Hospital in Asheville, where a sexual assault victim kit was collected. The hospital also kept her clothing. S.W. had staples put in her head to close a wound she had received, and the nurse noted bruises on her throat consistent with being choked as well as bruises on her arm. During a genital examination, the nurse noted that S.W.'s perineum and labia were reddened, and her posterior forchette was very red. The nurse also noted a whitish/tanish vaginal discharge which she collected for the forensic kit.
While still in the hospital, S.W. told Elizabeth Flynn Ramsey, a crime scene investigator with the Buncombe County Sheriff's Department, that after Defendant had raped her, she had cleaned up her vaginal area with a pink towel that was in the laundry room. Ms. Ramsey went to S.W.'s home later that day and photographed and collected the towel.
After being discharged from the hospital, S.W. did not want to go back to her home for fear that Defendant would come back and kill them so she and her mother stayed with a friend for several days before returning home. Detective Richard Baird of the Buncombe County Sheriff's Department interviewed S.W. on 15 June 2005. Detective Baird then located Defendant on 4 September 2005, at which time Defendant was informed of his Miranda rights and elected to give a statement. Defendant stated that he was 33 years old, having been born on 23 February 1972. He had dated Elaine on and off for ten years, but had broken up with her because she did not know what she wanted to do with her life. He had not seen her for six to nine months. While he knew S.W., he did not get along with her and she hated him. He further stated that he went to Elaine's home early in the morning of 13 June 2005 but Elaine was not there. He started drinking and S.W. started screaming at him. When he pushed her, she fell and hit her head on the kitchen table. He made sure she was okay and then left. He stated that he had nothing to do with any sexual assault on S.W.
On 18 October 2005, Sergeant Edward C. Davis, a detective with the Buncombe County Sheriff's Department, collected a cheek scraping sample from Defendant for analysis and comparison with the sexual assault kit that had been collected from S.W.
Karen Whittingham, a special agent with the State Bureau of Investigation, was qualified as an expert in DNA analysis. She opined that the DNA profile obtained from sperm found on the swabs taken from S.W.'s vagina, outer rectal area and external genital area matched the DNA profile obtained from Defendant's cheek swab.

II. Discussion

A. Aggravating Factor
By Defendant's first assignments of error, he contends that the finding of the "trust or confidence" aggravating sentencing factor is not supported by sufficient evidence.
N.C. Gen. Stat. § 15A-1340.16(d)(15) permits the imposition of an aggravated sentence if it is found that a defendant "took advantage of a position of trust or confidence, including a domestic relationship, to commit the offense." N.C. Gen. Stat. § 15A-1340.16(d)(15) (2003).[1] A jury must determine if an aggravating factor exists, and the State must prove an aggravating factor beyond a reasonable doubt. Blakely, 542 U.S. 296, 159 L. Ed. 2d 403; Allen, 359 N.C. 425, 615 S.E.2d 256 (2005).[2] Thus, we must determine whether sufficient evidence exists in this case to allow a jury to find the aggravating factor beyond a reasonable doubt.
The "trust or confidence" aggravating factor requires "the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other."State v. Mann, 355 N.C. 294, 319, 560 S.E.2d 776, 791 (2002) (quotation marks and citation omitted), cert. denied, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002). "Our courts have upheld a finding of the `trust or confidence' factor in very limited factual circumstances[,]" id. (citations omitted), and have determined this aggravating factor was not properly found where the victim and defendant were merely acquaintances. State v. Rogers, 157 N.C. App. 127, 577 S.E.2d 666 (2003); State v. Midyette, 87 N.C. App. 199, 360 S.E.2d 507 (1987),aff'd per curiam, 322 N.C. 108, 366 S.E.2d 440 (1988).
In State v. McGriff, 151 N.C. App. 631, 566 S.E.2d 776 (2002), the 13-year-old victim knew defendant because defendant was dating and living with her friend's sister. The victim and her friend visited defendant's house every day after school to baby sit, often when there were no adults other than defendant in the house. The victim had known defendant for approximately two months when he began calling her on the phone, touching her inappropriately, and writing letters to her. On the date of the incident which led to defendant's conviction of statutory rape, defendant talked the victim into coming over to his house. When she arrived, defendant told her to come upstairs with him where he then raped her. This Court concluded that this evidence was sufficient to support a determination that defendant took advantage of a position of trust or confidence to commit the offenses charged.
In State v. Bingham, 165 N.C. App. 355, 598 S.E.2d 686,disc. review denied, 359 N.C. 191, 607 S.E.2d 648 (2004), the 13-year-old victim met defendant when defendant and the victim's mother began dating. The victim and her mother moved into defendant's house, where they lived for approximately seven months before they moved into a house down the street. The victim and her mother then lived apart from defendant for about five months before moving back into his home. Therefore, the victim had known defendant for one year, and lived in the same house as defendant for seven months of that year, before defendant began abusing her. This Court concluded that, in accordance with McGriff, this was sufficient evidence that defendant took advantage of a position of trust or confidence to commit the offenses charged.
In the present case, the evidence tends to show that S.W. met Defendant when she was five years old and Defendant was a friend of her stepfather. After her mother and stepfather separated, Defendant began dating her mother. Defendant dated S.W.'s mother on and off for approximately ten years but had not seen her or S.W. in the six to nine months before he raped S.W.
Unlike in McGriff and Bingham, there is no evidence here that S.W. and Defendant had any personal relationship that would have led S.W. to rely on Defendant. There is no evidence that S.W. visited Defendant regularly, spent time alone with Defendant, lived in the same home as Defendant, or had any personal relationship outside of Defendant's intermittent dating relationship with S.W.'s mother. Furthermore, even assuming arguendo that a position of trust did exist, the evidence fails to show Defendant abused that position of trust in order to commit the rape. State v. Nicholson, 169 N.C. App. 390, 610 S.E.2d 433 (2005),appeal dismissed and cert. denied, 180 N.C. App. 238, 636 S.E.2d 341 (2006). Unlike in McGriff where defendant took advantage of his relationship with the victim to entice her to come over to his house for the purpose of committing a sexual offense, here "[D]efendant's actions were accomplished as a result of the use of force alone." Id. at 396, 610 S.E.2d at 437. The evidence tends to show that S.W. became uncomfortable with Defendant's presence in her home and repeatedly told him to leave. Instead of leaving, Defendant got himself another beer. S.W. then became more vocal, telling Defendant to leave or she would call the police. While Defendant was walking toward the laundry room, S.W. pushed him and told him again to leave. Defendant then hit her in the head several times, knocking her down, grabbed her by the throat and mouth so she could not breathe, and raped her.
We conclude that this evidence fails to support a finding that Defendant took advantage of a position of trust or confidence to commit the offenses of which he was convicted. Therefore, Defendant is entitled to a new sentencing hearing. State v. Marecek, 152 N.C. App. 479, 568 S.E.2d 237 (2002).

B. Juror Challenge
Defendant next argues that the trial court's denial of his challenge for cause of juror Porter on the ground that she could not be "fair and impartial" was erroneous.
We review a trial court's ruling on a challenge for cause for abuse of discretion. A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision. In our review, we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record. The question that the trial court must answer in determining whether to excuse a prospective juror for cause is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.
State v. Cummings, 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (internal quotation marks and citations omitted),cert. denied, ___ U.S. ___, 170 L. Ed. 2d 760 (2008).
During jury selection in this case, juror Porter indicated that the State's chief investigator, Richard Baird, had been her former pastor. She further indicated that she knew him fairly well, but not closely, and that although they had known each other for ten or fifteen years, they did not have planned interaction and only occasionally ran into each other and saw each other at church. When asked, "Do you think that you could still be fair and impartial in this case[,]" she responded, "Yes, sir." Juror Porter also indicated that she knew another woman sitting in the court room, who was a member of Defendant's family. She was then asked, "The fact that you know her and she may have some involvement that you just don't know about at this time, would that affect your ability to do your job like we talked about with Richard Baird? Can you still be fair and impartial to both sides in this case?" She responded, "Yes."
Defense counsel then asked her, "are you entirely sure and convinced that you will be able to listen fairly and impartially to the evidence that the State will present and hold them to their burden?" Juror Porter answered, "I would want to think I would be, but I would  I'd rather not do it knowing the two people, if that's possible."
Juror Porter also admitted to being a victim of a violent crime. Defense counsel asked, "Do you feel that it might be painful to hear stories that may remind you of events in the past?" Juror Porter answered, "I don't think anything would be painful because I've always bounced back very well from whatever I've done."
Defendant challenged juror Porter for cause on the ground that she could not be "fair and impartial." The trial court denied Defendant's challenge. Subsequently, Defendant peremptorily challenged juror Porter, exhausted his peremptory challenges by challenging five other jurors, renewed his challenge for cause against Porter before passing on the twelfth juror, and requested an additional peremptory challenge under N.C. Gen. Stat. § 15A-1214(h), stating that he would use it to challenge the twelfth juror, Margaret Kamisal. The trial court denied all of Defendant's motions and Kamisal sat as a juror at Defendant's trial. Defendant argues that the trial court's erroneous ruling on his challenge for cause of juror Porter was prejudicial because it forced him to exhaust his peremptory challenges, causing him to accept juror Kamisal, a juror he did not want. We are not persuaded by Defendant's argument.
While juror Porter expressed discomfort with the prospect of sitting on the jury, she specifically affirmed her understanding that "everyone who is charged with a crime is presumed to be innocent of the charge until proven guilty and that the mere charge itself cannot be perceived to be evidence of a crime[,]" and answered affirmatively several times that she would be able to be fair and impartial. Accordingly, we are unable to conclude that the trial court's denial of Defendant's challenge for cause of juror Porter was an abuse of discretion and we, thus, find no error.

C. Opening and Closing Remarks
By Defendant's next assignments of error, he contends he is entitled to a new trial because the prosecutor made several improper opening and closing statements.
Counsel must be allowed wide latitude in jury arguments. State v. Abraham, 338 N.C. 315, 451 S.E.2d 131 (1994). "Counsel may argue the facts in evidence together with all reasonable inferences that may be drawn therefrom in presenting counsel's side of the case." Id. at 338, 451 S.E.2d at 143. Whether counsel has abused this right is a matter ordinarily left to the sound discretion of the trial court. State v. Wilson, 335 N.C. 220, 436 S.E.2d 831 (1993). However, as Defendant did not object at trial to the challenged arguments, "the standard for review is whether such argument[s] [were] so prejudicial and grossly improper as to require corrective action by the trial judge ex mero motu." State v. James, 322 N.C. 320, 324, 367 S.E.2d 669, 672 (1988). While Defendant contends his objection during the opening argument to the prosecutor's description of Defendant as a "violent sexual predator" preserved the argument for appellate review under the lesser standard of prejudicial error, since Defendant failed to object to the same description during the State's closing argument, Defendant lost the benefit of the earlier objection. N.C. R. App. P. 10(b)(1). Accordingly, "[t]he impropriety of the [challenged] argument must be gross indeed in order for this Court to hold that a trial judge abused his [or her] discretion in not recognizing and correcting ex mero motu an argument which defense counsel apparently did not believe was prejudicial when he [or she] heard it." State v. Johnson, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979). "[T]o establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." State v. Lloyd, 354 N.C. 76, 116, 552 S.E.2d 596, 624 (2001) (quotation marks and citations omitted). In evaluating the prosecutor's statements, we must consider them in the context in which they were made. Lloyd, 354 N.C. 76, 552 S.E.2d 596.
In Defendant's brief, he asserts that the following statement was improper:
This case is about your responsibility, ladies and gentleman . . . to those members of our community that would fall prey to the likes of this defendant. The child who has already fallen prey and the ones whom he may prey upon in the future if we don't fulfill our responsibility. . . . This case is about our responsibility to those members of this community who would be preyed upon by someone who gets aroused by violence. . . . Soon the responsibility is going to be in your hands. . . . Return a verdict that says to any other victim out there who may fall prey to this defendant . . . that we hear and recognize our responsibility to protect this community.
Defendant alleges that through this closing statement, the prosecutor improperly (1) argued the jury should find Defendant guilty because the jury was accountable to S.W., unnamed future victims, and the greater community; (2) told the jurors to convict Defendant because the community demanded punishment; and (3) argued "general deterrence."
The above statement combines remarks from three different pages of the transcript of the prosecutor's closing argument which spans a total of thirty-nine pages. We must emphasize that
statements contained in [opening and] closing arguments to the jury are not to be placed in isolation or taken out of context on appeal. Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred.
State v. Cummings, 353 N.C. 281, 297, 543 S.E.2d 849, 859 (2001) (quotation marks and citations omitted).
The North Carolina Supreme Court in State v. Boyd, 311 N.C. 408, 319 S.E.2d 189 (1984), cert. denied, 471 U.S. 1030, 85 L. Ed. 2d 324 (1985), stated that "the jury's decision must be based solely on the evidence presented at trial and the law with respect thereto, and not upon the jury's perceived accountability to the witnesses, to the victim, to the community, or to society in general." Id. at 418, 319 S.E.2d at 197 (internal quotation marks and citations omitted). In Boyd, the prosecutor made the following remarks in closing argument:
. . . the reality of this case hit me.
We are talking about real people. By your verdict in this matter you are going to be saying to these real people what you think of what you have heard here this week. Your decision is going to tell those people what you think of what you heard here.
There are several people you will be answering to. What will you say to the people in this Country about what you have heard? What will you say about all those citizens out there in Surry County about what you have heard here this week? Will you say, "Okay, if it happened down there at Mayberry Mall on a Saturday"? [sic] Will you say "Okay"? [sic]
Id. at 417, 319 S.E.2d at 196. The prosecutor then went on to ask how the jury would respond to the witnesses, the paramedics, the victim, her parents, and her daughter if its verdict was for less than first-degree murder. The Court determined that "[f]ollowing a thorough review of the contested argument, we find that while we do not approve of the prosecutor's remarks, they do not rise to the level of such gross impropriety as to have required ex mero motu action by the trial judge." Id. at 418, 319 S.E.2d at 197.
Similar to the argument in Boyd, the contested argument in this case did not improperly require the jury's decision to be based upon the jury's perceived accountability to the witnesses, to the victim, to the community, or to society in general, and, thus, did not rise to the level of such gross impropriety as to have required ex mero motu action by the trial court.
In State v. Scott, 314 N.C. 309, 333 S.E.2d 296 (1985), the defendant contended that the trial court committed prejudicial error by overruling his objection to the prosecutor's argument to the jury. The part of the prosecutor's argument to which Defendant objected and properly presented for appellate review was as follows:
Now, we often hear, we often read in the paper or hear on television or anything else, something that happens, there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway. And, you know, you read these things and you hear these things and you think to yourself, "My God, they ought to do something about that."
. . . .
Well, ladies and gentlemen, the buck stops here. You twelve judges in Cumberland County have become the "they". [sic]
Id. at 311, 333 S.E.2d at 297. Our Supreme Court determined that "the trial court's failure to correct [this argument] upon timely objection requires that the convictions fall in the present case." Id. The Court explained that
[t]he impropriety of the prosecutor's argument in the present case does not arise from his having told the jury that "the buck stops here" or that the jurors had become "judges" in the case or had "become the `they'." These statements correctly informed the jury that for purposes of the defendant's trial, the jury had become the representatives of the community. It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community.Permitting the jury to act as the voice and conscience of the community is required because the very reason for the jury system is to temper the harshness of the law with the commonsense judgment of the community.
Id. at 311-12, 333 S.E.2d at 297-98 (internal quotation marks and citations omitted). However, the Court concluded that the prosecutor's statement that "there's a lot of public sentiment at this point against driving and drinking, causing accidents on the highway" was improper because "it went outside the record and appealed to the jury to convict the defendant because impaired drivers had caused other accidents." Id. at 312, 333 S.E.2d at 298.
Unlike in Scott where the prosecutor's argument was reviewed on appeal for prejudicial error, here the standard of review is much higher, requiring a showing that "such argument[s] [were] so prejudicial and grossly improper as to require corrective action by the trial judge ex mero motu." James, 322 N.C. at 324, 367 S.E.2d at 672. Furthermore, unlike the errant argument in Scott, the contested argument in this case did not go outside the record and appeal to the jury to convict Defendant because others had committed rapes. Instead, the argument "correctly informed the jury that for purposes of [] [D]efendant's trial, the jury had become the representatives of the community[,]" Scott, 314 N.C. at 311, 333 S.E.2d at 297, and properly allowed the jury "to temper the harshness of the law with the commonsense judgment of the community." Id. at 312, 333 S.E.2d at 298 (quotation marks and citation omitted). In Abraham, 338 N.C. 315, 451 S.E.2d 131, the Court stated that "[w]hile the prosecution may not argue the effect of defendant's conviction on others, i.e., general deterrence, the prosecution may argue specific deterrence, that is, the effect of conviction on defendant himself." Id. at 339, 451 S.E.2d at 143. Here, the prosecutor did not argue for general deterrence, but instead argued to convict "this defendant" as "someone who gets aroused by violence" to deter his future actions.
After a thorough review of the prosecutor's statements in their entirety, as well asBoyd, Scott, and Abraham, cited by Defendant in support of his position, we conclude that the above-quoted statements, when taken in the context of the argument as a whole, did not "so infect[] the trial with unfairness that they rendered the conviction fundamentally unfair." Lloyd, 354 N.C. at 116, 552 S.E.2d at 624.
Defendant also argues that "the prosecutor engaged in abusive and unsupported name-calling by repeatedly calling defendant `a violent sexual predator.'" Defendant contends he does not meet the statutory definition of a sexually violent predator which is:
'Sexually violent predator' means a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in sexually violent offenses directed at strangers or at a person with whom a relationship has been established or promoted for the primary purpose of victimization.
N.C. Gen. Stat. § 14-208.6(6) (2005). Furthermore, he argues that he does not meet any common understanding of a sexually violent predator.
In State v. Campbell, 133 N.C. App. 531, 515 S.E.2d 732,disc. review denied, 351 N.C. 111, 540 S.E.2d 370 (1999), defendant argued that the trial court erred in overruling his objection to the prosecution's labeling him a "sexual predator" in closing arguments. Unlike in this case, defendant inCampbell properly preserved the alleged error for appeal and would have been entitled to a new trial had there been a "reasonable possibility that the inflammatory or prejudicial characterization may have affected the jury's verdict." Id. at 538, 515 S.E.2d at 737 (quotation marks and citation omitted). Distinguishing Berger v. United States, 295 U.S. 78, 79 L. Ed. 1314 (1935), where the Supreme Court found that the prosecuting attorney's "misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential[,]" id. at 89, 79 L. Ed. at 1321, this Court found no error as
the prosecutor's use of the term "sexual predator" was slight, and was confined to one paragraph of the closing argument. Given the abundance of evidence indicating defendant's guilt, most importantly, his confession, we find that there is no reasonable possibility that this lone instance of prejudicial characterization of defendant may have affected the jury's verdict.
Id. at 539, 515 S.E.2d at 737.
Here, in his opening statement, over Defendant's objection, the prosecutor stated that "all of the evidence will show and expose this Defendant's actions on June the 13th of 2005, for exactly what they were, the actions of a violent sexual predator." In his closing argument, the prosecutor stated, this time without objection, that "[t]he scary thing about this is once they start getting violent, he starts getting aroused. That's called a violent sexual predator."
Similar to Campbell, the prosecutor's use of the term "violent sexual predator" was slight, and was confined to one remark in both the opening and closing statements. Given the abundance of evidence indicating Defendant's guilt, we discern no reasonable possibility that this characterization of Defendant may have "so infected the trial with unfairness that [it] rendered the conviction fundamentally unfair." Lloyd, 354 N.C. at 116, 552 S.E.2d at 624. Accordingly, we find no error.
Defendant next argues that the prosecutor improperly misstated the legal definition of reasonable doubt when he stated, "[f]ully satisfied, entirely, that's not the state of the law[.]" However, Defendant again argues the prosecutor's statement out of context. In explaining reasonable doubt to the jury, the prosecutor stated:
[R]easonable doubt is a doubt that fully satisfies and entirely convinces you. I objected. I said that's not the full instruction. But those words are in the instruction, but, you see, taken out of context those words can be misleading. Because fully satisfied and entirely convinced in laymen's terms sounds like 100 percent. Fully satisfied, entirely, that's not the state of the law, and that's why it has to be taken into context. Because the law recognizes, recognizes that you can have some scintilla of doubt or some doubt, but sill be fully satisfied and entirely convinced.
We conclude that the prosecutor's statement, taken in context of the entire closing argument, was not improper and we find no error.
Finally, Defendant argues that the prosecutor improperly asserted his own opinion that S.W. was telling the truth.
In referencing S.W.'s trial testimony, the prosecutor argued, "That's called the truth. That's called the truth . . . you know this is true, every bit of it." In referencing S.W.'s pre-trial statements, the prosecutor argued, "She wasn't lying[.]" While Defendant is correct that N.C. Gen. Stat. § 15A-1230(a) prohibits an attorney "[d]uring a closing argument to the jury [from] . . . express[ing] his personal belief as to the truth or falsity of the evidence[,]" the statements quoted by Defendant clearly do not express the prosecutor's personal belief. Accordingly, this argument is overruled. As for the alleged errors in the prosecutor's remarks, we find no error.

D. Disputed Issues of Fact
Defendant next asserts he is entitled to a new trial because the trial court failed to resolve material issues of disputed fact in denying his motion to suppress evidence.
Appellate review of a defendant's motion to suppress is limited to determining whether the trial court's findings are supported by competent evidence, in which case they are binding on appeal, and whether those findings support the trial court's conclusions of law. State v. Hendrickson, 124 N.C. App. 150, 476 S.E.2d 389 (1996) (citation omitted). On 22 January 2007, Defendant filed a motion to suppress evidence of "cheek scrapings" or "mouth swabs" taken from him on 18 October 2005. He contends the evidence was obtained through an unconstitutional, illegal, and warrantless search and seizure of his person without his voluntary consent while he was in custody, in violation of N.C. Gen. Stat. § 15A-233 and the Fourth Amendment to the United States Constitution. After a hearing, the trial court denied the motion.
Defendant contends that the trial court "failed to resolve material disputed factual issues relating to the issue of [D]efendant's consent to the October 18 search and seizure." Defendant argues that the record "shows there were many disputed issues of fact[,]" and in his brief, recites conflicting statements made by Defendant and Detective Baird, who testified at the hearing for the State.
In its order denying Defendant's motion, the trial court acknowledged that the evidence was conflicting as to the voluntariness of the cheek swabs. Although the trial court recited Defendant's testimony for the record, the trial court specifically stated that it did not find as fact any of that recited testimony. The trial court did find, however, "that by the evidence presented . . . and considering the credibility of the witnesses and my opportunity to observe them in the courtroom . . . that [Defendant] decided freely and by his own consent to give the swabs to the officers who came to jail to see him." "On conflicting testimony[,] determinations of witnesses' credibility is the province of the trial court." State v. Booker, 309 N.C. 446, 450, 306 S.E.2d 771, 774 (1983). A thorough review of the evidence presented at the hearing reveals that competent evidence exists to support the trial court's factual determinations. "Although conflicts exist in the evidence, their resolution is for the trial court[,]" id., and the trial court in this case resolved the conflicts against Defendant. As the trial court did not fail to resolve disputed issues of material fact, and the trial court's findings of fact are supported by competent evidence, we overrule Defendant's argument.

E. Reportable Conviction
By his final argument, Defendant contends the trial court erred in its finding in the statutory rape case, file number 06 CRS 454, that the offense "is a reportable conviction involving a minor" under N.C. Gen. Stat. § 14-208.6. The State concedes that this finding is errant. Therefore, we remand this case to the trial court to vacate that finding.
For the above-stated reasons, we find
NO ERROR IN PART, REVERSE AND REMAND IN PART, AND VACATE IN PART.
Judges HUNTER and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] Although N.C. Gen. Stat. § 15A-1340.16 was substantially amended in June 2005 to comply with the United States Supreme Court's holding in Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403, reh'g denied, 542 U.S. 961, 159 L. Ed. 2d 851 (2004), and the North Carolina Supreme Court's holding in State v. Allen, 359 N.C. 425, 615 S.E.2d 256 (2005), withdrawn by 360 N.C. 569, 635 S.E.2d 899 (2006), the statutory changes were effective only for offenses committed on or after 30 June 2005.>
[2] Although the version of N.C. Gen. Stat. § 15A-1340.16 in effect on the date of the alleged offenses in this case required trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant, and permitted the imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence, the Allen Court held that its holdings applied to cases in which the defendants had not been indicted as of 1 July 2005. Allen, 359 N.C. 425, 615 S.E.2d 256. As Defendant was indicted on 7 August 2006, the holdings in Allen apply in this case. Allen was withdrawn in 2006 in light of the United States Supreme Court's decision in Washington v. Recuenco, 548 U.S. 212, 165 L. Ed. 2d 466 (2006), which concludes that Blakely error is subject to harmless error analysis. That holding is irrelevant in this case.